THE STATE ex rel. JAMES HAGERMAN, JR., Collector of City of St. Louis, v. ST. LOUIS & EAST ST. LOUIS ELECTRIC RAILWAY COMPANY, Appellant.

Division One, December 1, 1919.

1. **TAXES: Prima-Facie Case: Interstate Railway.** The record of the valuation and assessment of the property of an electric railway over an interstate bridge of the State Board of Equalization made in scrupulous conformity to the methods and plans prescribed by the statute, and certified by the State Auditor, together with an admitted correct copy of the tax bill containing complete itemizations of the kind of property and rate of taxation, makes a prima-facie case against such railway for such taxes.

State ex rel. Hagerman v. Electric Ry. Co.

2. ———: ———: **Tax Bill.** The statute does not require that the tax bill be filed with the petition in a suit against railroads for delinquent taxes. It makes the record of the State Board of Equalization certified by its secretary prima-facie evidence of the facts therein recited in such suits. But a correct tax-bill can be offered as evidence.

3. ———: **Double: Electric Railway Over Interstate Bridge.** Where an electric railway by contract is given the right to operate its trolley lines over an interstate bridge belonging to other corporations, in consideration of a payment to them of a certain portion of the passenger fares received by it, its trolley wires, poles, cars, rails and other property owned and used by it in operating an electric railway are subject to taxation, and if such properties are separately assessed, and the other companies are assessed with taxes for the value of the bridge itself and its other structural elements, there is no double taxation. The corporate grantee of a right of user of the bridge can be separately assessed for taxes according to the value of its trolley lines and other distinct property used in operating its electric railway over the bridge. [Distinguishing State ex rel. v. Railroad, 196 Mo. 523.]

4. ———: **Discrimination: Neglect to Assess Other Property.** The neglect of the State Board of Equalization to assess other railroads liable to assessment under the same valid statutes under which defendant's railway properties were assessed, was not such a discrimination as invalidated the assessment against defendant.

5. ———: **Franchise.** A railway company which by the terms of its charter possesses the right to construct and operate a railroad, and has obtained permission from the city to operate its street railway over an interstate bridge for a period of fifty years, has a railroad franchise other than a franchise to be a corporation; and when the franchise to operate a railroad, which rested primarily in legislative grant, became consummate when it obtained permission of the city to occupy the bridge, its said franchise became taxable, upon a mileage basis, and could be assessed under the designation of "all other property."

6. ———: **Property Outside State: Railway Over Interstate Bridge.** The State Board of Equalization does not exceed its authority by taxing the tangible and intangible property of an electric railway, operated over an interstate bridge, within the territorial limits of this State.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Kinsey*, Judge.

AFFIRMED.

*Dawson & Garvin* for appellant.

(1) The tax bill is not legal evidence in this case, because (a) not authenticated by certificates of the collector or filed with the petition as required by law. R. S. 1899, sec. 9303; State ex rel. v. Scott, 96 Mo. 75; State ex rel. v. Phillips, 102 Mo. 664. (b) It is not baed on a valid assessment. State ex rel. v. Cunningham, 153 Mo. 642; Cort v. City of Cameron, 19 Mo. App. 585. (2) The allegation of the petition "that defendant owned, on June 1, 1906, 346 miles of roadbed and superstructure rolling stock and 'all other property mentioned in Laws 1901, sec. 2, p. 232,' " is contrary to the facts. (3) The State Board has no authority (even where it has jurisdiction) either by name or under any disguise, as increased valuation, to add property which does not belong to defendant.' State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Alt., 224 Mo. 513. (4) The trial court erred in not nonsuiting plaintiff as requested by defendant. R. S. 1899, sec. 9303; State ex rel. v. Railroad, 135 Mo. 618; State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Bank of Cartersville, 180 Mo. 717; Union Transit Co. v. Kentucky, 199 U. S. 194, 210; Louisville, Ferry Co. v. Kentucky, 188 U. S. 385, 396; Mahan v. Meredith Bank, 160 Mo. 640; Leavell v. Blades, 237 Mo. 695; Laws 1901, p. 232; State ex rel. v. Brinkop, 238 Mo. 298; (5) The tax sought to ·be collected is in part double taxation and hence illegal. The same roadbed and superstructure was taxed against the St. Louis Bridge Company and said tax paid by it. Constitution art. 10, secs. 3 and 4; State ex rel. v. Railroad, 196 Mo. 524; State ex rel. v. Bridge Co., 134 Mo. 32; State ex rel. v. Railroad, 215 Mo. 479; Wright v. Cent. of C. R. C., 236 U. S. 674; State ex rel. v. Brinkop, 238 Mo. 298. (6) The attempted taxation of defendant is unjust discrimination and in violation of the Constitution and laws of Missouri. Constitution art. 1, sec. 8; City of Independence v. Gates, 110 Mo. 374; Kansas City v.

Grush, 151 Mo. 134;   Brookfield v. Tooney, 141 Mo.
625.   The steam railroad companies using said Eads
Bridge are not taxed on roadbed and superstructure or
rolling stock on said bridge, or on their lease of all
the properties of said St. Louis Bridge Company, spe-
cifically or under head "all other property," which is
in accordance with the law of Missouri.   (7) Where
the State Board of Equalization has jurisdiction, its
valuation and assessments must be in accordance with
the statutory requirements as construed by the courts.
R. S. 1899, sec. 9358;   State ex rel. v. Railroad, 135 Mo.
618;   State ex rel. v. Lesser, 237 Mo. 318.   No personal
property is taxable unless the statutes declare it to be
taxable.   State ex rel. v. Lesser, 237 Mo. 310;   State
ex rel. v. Bank of Carterville, 180 Mo. 717;   Union
Transit Co. v. Kentucky, 199 U. S. 194.   The franchise
to be a corporation is not taxable.   Laws 1901, p. 232.
(8) Property having its situs outside of Missouri is
really, if not specifically, included contrary to law.
The trial court erred in refusing to so declare the
law as requested by defendant.   Pac. Railroad Co. v.
Cass County, 53 Mo. 17;   State ex rel. v. Stephens, 146
Mo. 681;   State ex rel. v. Brinkop, 238 Mo. 298;   Rail-
road v. Penn, 198 U. S. 341.   (9) Defendant owned no
intrastate railroad property and did no intrastate busi-
ness in Missouri, and the employment of the "unit rule"
or "mileage" system of valuation and assessment in this
case was illegal.   Fargo v. Hart, 193 U. S. 490;   Louis-
ville Ferry Co. v. Kentucky, 188 U. S. 396;   Union
Transit Co. v. Kentucky, 199 U. S. 210;   Union Rate
Cases, 230 U. S. 352;   State ex rel. v. Wiggins Ferry
Co., 208 Mo. 642;   Railroad v. Ark. ex rel. Norwood, 235
U. S. 350;   Bacon v. Illinois, 227 U. S. 512.   (10) The
jurisdiction of the State Board of Equalization to
assess is limited to certain kinds of steam and street
railroad property, specified in R. S. 1899, section 9339
(viz., length of roadbed and superstructure in city
through or in which it is located in this State, rolling
stock and all other movable property) owned and used

620    SUPREME COURT OF MISSOURI.

State ex rel. Hagerman v. Electric Ry. Co.

by a railroad corporation operated as such by virtue of its public franchises, and which does all or a considerable part of its railroad business wholly within the State of Missouri. R. S. 1899, sec. 9344; State ex rel. v. Merchants Bank, 160 Mo. 640; Railroad v. Cass County, 53 Mo. 17; Leavell v. Blades, 237 Mo. 695. (a) The maintenance of defendant's charter to be a railroad corporation merely does not make defendant or its property assessable or taxable by the State Board of Equalization as a railroad within the meaning of the Constitution and statutes. Laws 1901, p. 232; R. S. 1909, secs 11551, 11552; Anderson v. Morris E. and R. Co., 216 Fed. 83; State ex rel. v. Brinkop, 238 Mo. 298. (b) Property tangible and intangible never in Missouri is not taxable by Missouri. St. Louis v. Wiggins Ferry Co., 78 U. S. (11 Wall.) 423; Leavell v. Blades, 237 Mo. 695; State ex rel. v. Brinkop, 238 Mo. 298; State ex rel. v. Lesser, 237 Mo. 310; State ex rel. v. Wiggins Ferry Co., 208 Mo. 622; Louisville Ferry Co. v. Kentucky, 188 U. S. 396; Union Rate Cases, 230 U. S. 352. (11) The attempted taxation of defendant is a direct burden upon interstate commerce and in violation of Article 1, section 8, of the Constitution of the United States, giving Congress sole power to regulate commerce among the several states. Fargo v. Hart, 193 U. S. 490; St. Louis v. Wiggins Ferry Co., 78 U. S. (11 Wall.) 423; South Covington Ry. Co. v. Covington, 235 U. S. 537.

*Thomas G. Rutledge* and *J. M. Lashly* for respondent.

(1) The same questions involved here have been determined by this court under the same statutes, for railroad taxes levied under the classification of "all other property" in the taxation of that part of the intangible property of the Wiggins Ferry Company that was located in Missouri, and the question decided in favor of the validity of the tax in the case of State ex rel. Hammer v. Wiggins Ferry Co., 208 Mo. 622. (2) The

law under which this assessment was made was passed in 1901 (Laws 1901, p. 232, now Secs. 11551-2, R. S. 1909) to give a legal basis to the assessment of the intangible property of corporations owning, operating and managing public utilities, and was undoubtedly based upon the decisions of the Federal Supreme Court holding such intangible values to be property properly taxable in a state in the proportion that the length of the road there bears to the entire system. State ex rel. Hammer v. Ferry Co., 208 Mo. 622; St. L. Ry. v. Arkansas, 235 U. S. 350. (3) The law presumes that the Board of Equalization does its duty in making the assessment and making the computations and valuation upon which it is based. The valuation will, therefore, be presumed to be correct. As to details of procedure the statute is directory merely. State ex rel Hammer v. Ferry Co., 208 Mo. 662; State ex rel. v. Tel. Co., 165 Mo. 516; State v. Lord, 118 Mo. 4; Agan v. Shannon, 103 Mo. 661; Pittsburgh Ry. v. Backus, 154 U. S. 421; State ex rel. v. Hannibal Ry., 113 Mo. 308. The mere overvaluation of this road is not a defense, as the courts will not take on themselves the functions of a revising or equalizing board. Sec. 11399, R. S. 1909; Stanley v. Albany Co., 121 U. S. 535; Western U. Tel. Co. v. Missouri, 190 U. S. 420. (4) A state may exact from a railway company a tax upon that portion of its property within its borders, and, in assessing it for the purposes of taxation, take into consideration its value as a going concern and as a part of a general system extending over several states. State ex rel. Hammer v. Ferry Co., 208 Mo. 662; St. Louis Railroad Co. v. Norwood, 235 U. S. 350; Amer. Refrig. Transit Co. v. Hall, 174 U. S. 70; Western U. Tel. Co. v. Taggart, 163 U. S. 1; Western U. Tel. Co. v. Atty.-Gen., 125 U. S. 530; Western U. Tel. Co. v. Atty.-Gen., 141 U. S. 46; Maine v. Grand Trunk Ry., 142 U. S. 217; Cleveland Ry. v. Backus, 154 U. S. 439; Henderson Bridge Co. v. Kentucky, 166 U. S. 150; L. & N. Railroad Co. v. Greene, 244 U. S. 522; Atl. & P. Tel.

622 SUPREME COURT OF MISSOURI.

State ex rel. Hagerman v. Electric Ry. Co.

Co. v. Philadelphia, 190 U. S. 160; Glue Co. v. Oak Creek, 247 U. S. 321; Postal Tel. Co. v. Adams, 155 U. S. 688; Express Co. v. Minnesota, 223 U. S. 335; Car. Co. v. Penn, 141 U. S. 18; Wisconsin Ry. Co. v. Powers, 191 U. S. 379. To be objectionable, interference with interstate commerce must be direct and not the mere incidental effect of the requirement of the usual proportional contribution to the public maintenance.

BOND, J.—This is a suit by the Collector of the City of St. Louis for taxes for the year 1907, assessed by the State Board of Equalization against .364 of a mile of railroad, owned and operated by the defendant corporation in the City of St. Louis.

The case was submitted to the trial judge, a jury being waived, upon an agreed statement of facts. The finding and judgment of the court were rendered in favor of the plaintiff for taxes and interest in the sum of $8356.19, to which was added one thousand dollars attorneys' fee, allowed and taxed as costs. Defendant duly appealed.

The agreed statement of facts, or so much thereof as is pertinent, will be stated in connection with the rulings made upon the errors insisted upon in the brief and argument of appellant.

I. It is claimed that plaintiff failed to prove the case stated. The defendant procured a charter from the State of Missouri in the year 1889, as a railway company, with its western terminus in Missouri and an eastern terminus in Illinois. It has exercised the franchise granted thereunder by entering into **Prima-Facie Case.** contracts with the St. Louis Bridge Company, a corporation organized in Missouri and Illinois and the owner of a toll bridge, known as the Eads Bridge, extending from the City of St. Louis, Missouri, to the City of East St. Louis, Illinois; the Missouri Pacific Railroad Company and the Wabash Railway Company, by virtue of which contracts the defendant,

in consideration of a certain division of the fare collected from passengers which it should transport across the upper deck of said bridge, was permitted to operate thereon electric trolley cars. In April, 1902, these contracts were cancelled and a new one made by defendant with the Terminal Railroad Company of St. Louis which had previously acquired the leasehold of said bridge. This "said substitute agreement is of date April 11, 1902, and permits defendant to operate electric cars on the upper roadway of said bridge for fifty years unless sooner terminated by said Terminal Company." Two connecting street railways, both Illinois corporations, are made parties to this contract, the object of their joinder being to secure to the passengers carried by them a continuous passage over defendant's electric trolley-car railroad running over said bridge and terminating in St. Louis, Missouri. In this connection the agreed statement of facts further recites:

"Under said agreement the said Terminal Association retains ownership and control of the tracks over which said trolley cars are to be run for passenger traffic only; said passengers are to be carried for a certain division of the fare of not less than five nor more than ten cents per passenger, as determined by said Terminal Company to be paid by said bridge passengers for riding across said Eads Bridge; said electric cars to be run between the termini of said bridge; and for refusal, inability or failure of the other parties to direct travel destined to pass by way of East St. Louis to or from said City of St. Louis exclusively to said Eads Bridge, or to keep the other conditions of said agreement, said Terminal Company reserves the right to declare said agreement terminated and canceled."

The defendant company was incorporated originally for $100,000. Its capital stock was subsequently increased to $250,000 in 1890, and in 1902 to $500,000. Its bonded indebtedness is $500,000, on which it pays five

624 SUPREME COURT OF MISSOURI.

State ex rel. Hagerman v. Electric Ry. Co.

per cent interest, and has always paid dividends on its stock.

The tax bill sued on contains itemizations according to the statute of the nature and valuation of defendant's property and the rate of taxation levied thereon for that year, showing the aggregate amount sued mitted to be correct, was filed with the petition. The petifor. The original bill was not filed, but a copy, adtion is substantially in the form prescribed by Section 11593, Revised Statutes 1909.

In assessing the property of defendant for the year 1907, the Board of Equalization specified the value of its passenger cars, its money on hand, the proportion of its rolling stock in this State, the proportion of its roadbed and superstructure in this State, and lastly "all other property" at $500,000.4625 per mile, which last item, computed at the length of the road in this State, amounted to $173,000.16. The addition of all the items at $186,019.98, is the basis of the taxes levied.

The agreed facts show that at the time of this assessment defendant "owned property in the State of Missouri consisting of certain poles and overhead trolley wires erected and maintained on the west end of said tinuation of other poles and overhead trolley wires erect-Eads Bridge as a necessary working part and coned and maintained on the east or Illinois end of said bridge, all under said agreement of July 26, 1889, and said substitute agreement, and also $26,524.55 on deposit on June 1, 1906, in a certain bank of the city of St. Louis, Missouri, which was proceeds of said business done on said bridge under said agreements, and also two cars valued at $850 each."

The property, tangible and intangible, owned and operated in this State by defendant, possessed great value and earning power and to provide for its taxation, the statutes relating to the taxation of franchises other than that of corporate entity, were enacted. [Laws 1901, p. 232; R. S. 1909 secs. 11551, 11552.] The

method and plan of assessment and valuation prescribed in these statutes was scrupulously followed by the State Board of Equalization. The record of its action was filed with the Auditor (R. S. 1909, sec. 11573) whose certificate thereof is made prima-facie evidence of the facts therein recited (R. S. 1909, sec. 11578; State ex rel. v. Met. St. Ry. Co., 161 Mo. 188). We think this and other evidence in the agreed statement of facts sufficed to make a prima-facie case for plaintiff.

We have not overlooked the contention that the admittedly correct tax bill copied in the agreed statement was not filed with the petition. That is not required by the statutory form applicable to suits against railroads for delinquent taxes. [R. S. 1909, sec. 11593; State ex rel. v. Railroad, 113 Mo. 297.]

II. It is insisted by appellant that the tax assessed in this case is void because double taxation, in that the

Double Taxation.

bridge, subject to the easements evidenced by the contract under which defendant conducts and operates its electric railway, was also assessed for taxation against the grantors to the defendant.

It will be observed that in the assessment of the property of defendant the State Board of Equalization left out of view all of the structural elements essential to the purposes for which the bridge was built and the uses to which it was to be put, and confined its view exclusively to those things which were descriptive of the separable ownership of the defendant under and by virtue of the contract possessed by it to operate and conduct its electric railway over the upper surface of the bridge, and those things which it had placed on the bridge to facilitate the operation of its electric trolley railway.

It is perfectly plain from the agreed statement of facts that the owners of the bridge were not the owners of the rolling stock, the metals or rails over which the trolley line ran, nor the right of user thereof, nor the

40—279 Mo.

trolley poles and wires, and it was these, coupled with the franchise value arising from the use and operation of them by the defendant railroad, which the Board of Equalization intended to assess as the property of defendant. And it is equally clear that in its separate assessment of taxation on the bridge itself, against the owners thereof, the board did not take cognizance of the property and franchises assessable to the owners of the trolley company. There is nothing in this method of taxation which militates against the doctrine stated in State ex rel. v. Railroad, 196 Mo. 523, where it was correctly held that a bridge as an entirety, having been taxed once, could not, without violating the constitutional principles forbidding double taxation, be taxed a second time against the lessor. In the case at bar the bridge as a bridge, embracing its multiform uses as such, was taxed against the owners thereof, but that assessment in nowise precluded the State Board of Equalization from making another assessment against the corporate grantee of a contract of user of a right of way for its electric trolley line over said bridge. The properties taxed were distinct and the ownerships were different, and there is nothing in the agreed statement of facts which shows that the Board of Equalization had in mind the values of the property belonging to defendant when it assessed the bridge property against its separate owners.

Our conclusion is that the action of the State Board of Equalization in levying the assessment sued for, did not contravene the constitutional inhibition against double taxation.

III. There is no merit in the contention of unjust discrimination in this case. Whether defendant is taxable depends wholly upon the provisions of Sections 11551, 11552, Revised Statutes 1909 (Laws 1901, p. 232). If those statutes are valid and applicable, then the taxes assessed against defendant in this

Neglect to Assess Other Railroads.

case were lawfully made, irrespective of the omission of the State Board of Equalization to make assessments under the same statutes against other railroads liable to assessment thereunder. The cases cited by appellant on this point are wholly irrelevant in that they refer to the *invalidity* of a law or city ordinance, which, by its terms, was not uniform as to the same classes. Here there is no dispute as to the validity of the statutes requiring taxation of franchises, for the only point made is that the board neglected to assess others liable under a valid law.

IV. Appellant insists that the tax assessment is illegal because the defendant owns no railroad franchises except the franchise to be a corporation, which is a non-taxable one. This is a misconception. The defendant does not own railroad franchises other than that implied in that of a grant of a charter to it. It possesses, by the terms of its charter, the right to contract and operate a railroad. The bridge over which its track is laid is, in a general sense, a public highway. Under the Constitution of this State, its right to operate its street railway over the public highway (the bridge) could only be exercised by the consent of the local authorities having control of the highways proposed to be occupied by such street railway. [Constitution, art. 12, sec. 20.] When it obtained this permission to operate its street railway on this public highway for fifty years, the legislative grant instantly became effective and vested in appellant a valuable franchise wholly distinct from its franchise of artificial entity (State ex rel. v. Railroad, 140 Mo. l. c. 549) and one which is specifically assessable for taxation under the terms of the statutes providing for taxation of franchises. [State ex rel. v. Wiggins Ferry Co., 208 Mo. 622.] Proceeding under these statutes and in accordance with the method prescribed in a subsequent section (Sec. 11559, R. S. 1909) the Board of Equalization assessed and adjusted the taxes laid on defendant's franchises on a mileage basis

Franchise.

and after the hearing of evidence, and in so doing it arrived at the conclusion that the value of the intangible property of defendant is Missouri was $173,000.16. It referred to this specific assessment as one made on "all other property" of defendant, a method of distinguishing the various items approved in State ex rel. v. Wiggins Perry Co., 208 Mo. 622. In the present case, as has been seen, the franchise to operate a railroad resting primarily in legislative grant, became consummate when the consent to occupy the bridge for that purpose was obtained, for then it ripened into a legislative privilege and fell within the correct meaning of the term "franchise," which implies a privilege conferred by law to do that which "does not belong to the citizens of the country generally as a common right." [12 R. C. L. 173, sec. 1 et seq.; State ex rel. v. Weatherby, 45 Mo. l. c. 20.] According to the agreed facts this franchise vested in appellant, was a practical monoply with a possible life of fifty years.

V. Nor are we able to concur in the view that in the assessment sued on in this case, the Board of Equalization undertook to tax property outside the jurisdiction of the State of Missouri. On Jurisdiction. the contrary the description of the property taxed, the itemization of amounts, discloses that they were referable only to tangible and intangible property of defendant within the territorial limits of this State.

VI. It is finally insisted by appellant that the taxation sued upon is void under the Federal Constitution vesting in Congress the power to regulate Interstate interstate commerce and prohibiting the states Property. from taking property without due process.

It is not within the power of the states to put a direct burden on interstate commerce, the exclusive regulation of which is granted to Congress by the Constitution of the United States (U. S. Constitution, art. 1, sec. 8). But this provision does not prevent the assess-

ment of property situated in the several states because it is a part of a unified system which is appropriated to interstate commerce. In such cases the property "may be taxed at its value as it is, in its organic relations, and not merely as a congeries of unrelated items, [for] taxes on such property have been sustained that took account of the augmentation of value from the commerce in which it was engaged. [Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194; Adams Exp. Co. v. Kentucky, 166 U. S. 171; Fargo v. Hart, 193 U. S. 490.] So it has been held that a tax on property and business of a railroad operated within the State might be estimated prima-facie by gross income, computed by adding to the income derived from business within the State the proportion of interstate business equal to the proportion between the road over which the business was carried within the State to the total length of the road over which it was carried. [Wisconsin & Mich. Ry. Co. v. Powers, 191 U. S. 379.] Since the commercial value of property consists in the expectation of income from it, and since taxes ultimately at least, in the long run, come out of income, obviously taxes called taxes on property, and those called taxes on income or receipts, tend to run into each other somewhat as fair value and anticipated profits run into each other in the law of damages. The difficulty of distinguishing them became greater when it was decided, not without much debate and difference of opinion, that interstate carriers' property might be taxed as a going concern." [Galveston etc. Ry. Co. v. Texas, 210 U. S. 217, 227.]

Under the agreed statement of facts appellant owned a usufruct in about one-third of a mile of railroad track on that portion of the bridge within the limits of Missouri. It also owned, as stated before, the rails, the superstructure and wires which enabled it to operate its trolley cars over this line. It also owned money on deposits in banks in Missouri; also the franchise of operating its railroad, granted to it by

the Legislature of the State, and consented to by the local authorities in charge of the bridge. All of this property was within the territory of this State and, therefore, its assessment for taxation did not impose a direct burden upon interstate commerce under the principles declared and the rule stated in the foregoing quotation from the opinion of the Supreme Court of the United States and the authorities therein cited. The imposition in the case at bar was purely a tax on property as such, locally situated and upon a Missouri franchise locally enjoyed. It was assessed in strict accordance with the provisions of the statutes of this State and the Board of Equalization, in making this assessment, was entitled to consider the increase in value of the property assessed by reason of its being an integral part of a railroad engaged in interstate traffic, and they were entitled to discerp the value of the property in Missouri from that of the other property of which it was a part, in the manner prescribed in the statute providing for its assessment and sanctioned by the foregoing decision of the Supreme Court of the United States. This, we think, was substantially done in the present case. We find nothing in the agreed statement of facts which tends to show that this assessment was so laid as to take the property of appellant without due process.

Our conclusion is that the judgment of the trial court must be affirmed. It is so ordered.

*Blair, P. J.,* and *Graves, J.,* concur; *Woodson, J.,* absent.