## DELMARVA POWER AND LIGHT COMPANY OF MARYLAND *v.* EBERHARD

[No. 455, September Term, 1966.]

274

*Decided June 29, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*John W. T. Webb,* with whom were *Webb & Burnett* and *Marvin H. Smith* on the brief, for appellant.

*Wilbert L. Merriken* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

One who must decide the meaning of the term "public easements" in the context of the statute, Code (1957), Art. 81, § 112, which makes a decree in a proceeding to foreclose the right of redemption of property sold for taxes final and conclusive and which vests in the plaintiff "an absolute and indefeasible title in fee simple in the property, free and clear of all * * * encumbrances thereon, except * * * public easements to which the property is subject," [1] must be reminded of Shakespeare's thought in Act I, Scene 3, of the *Merchant of Venice* that "the devil can cite Scripture for his purpose."

One view is that a public easement is one which gives the individual members of the general public a right of passage over or the use of delineated or ascertainable areas of land or water (and probably less well-delineated areas of air) ; another view, more amorphous, is that included in the concept of a public easement is an easement which a public utility or public service corporation could acquire by condemnation because it could be so acquired only for a public use.

The need to find the answer arises in this wise. In 1961 William Edward Fluharty and his wife conveyed to the Eastern Shore Public Service Company of Maryland (now the Delmarva Power and Light Company) and to the Chesapeake and Potomac Telephone Company of Maryland, by a writing duly signed, sealed, acknowledged and recorded, permission to place on their property near Federalsburg in Caroline County "the overhang of conductors which are to extend from Pole ‡ 39AN * * * to a proposed pole to be located on the property adjoining Grantor's property to the West" and granted a right of in-

---

1. Chapter 69 of the Laws of 1967 amended § 112 of Art. 81 to substitute for "public easements" "easements to which the property is subject and of which the plaintiff had actual or constructive notice at the time of sale."

·gress and egress for the purposes of construction, inspection, renewal, repair and removal. The Fluhartys did not pay their taxes and the treasurer of Caroline County sold their property which had an assessed value of $1,800 to recover $133.57 of taxes in arrears. Eberhard, the appellee, bought the property and was issued a Certificate of Sale. The property was not redeemed within the time the law permits and Eberhard filed a bill in the Circuit Court for Caroline County seeking a decree which would foreclose all rights of redemption. Delmarva and the Chesapeake and Potomac Telephone Company were made parties. Delmarva appeared, asserting that "its easement is a public easement within the purview of § 112 of Article 81" of the Code.

The parties stipulated that Delmarva is a Maryland public service or public utility corporation engaged in the exercise of its franchise in the operation and distribution of electricity to various communities including Federalsburg and adjoining areas in Caroline County to those of the public who desire to be consumers of its electric current, that Delmarva is authorized and empowered to acquire by condemnation any property or right whatsoever necessary for its purposes and that on November 24, 1961, Delmarva obtained the easement here involved from the Fluhartys.

After consideration of the bill and answer and the stipulation, Judge DeWeese Carter construed the term public easement to mean a public way, that is, a road or street which every citizen has the right himself to use. Delmarva appeals, asserting still that its easement is a public easement.

Clearly a public easement includes an easement that gives members of the public a right of passage over a road or street, whether the bed is privately or publicly owned. 3 Tiffany, *Real Property* §§ 772 and 923-37 (3d ed.) ; 2 *American Law of Property* § 9.50; 25 Am. Jur. 2d *Easements and Licenses,* § 7 ; *Lonaconing Railway Co. v. Consolidation Coal Co.,* 95 Md. 630.

There are other public rights which can be classed as public easements, such as the right in the general public of navigation on the waters of a stream or lake, whether the bed is privately or publicly owned, the similar right of fishing and hunting over

navigable waters (sometimes restricted to waters publicly owned), and the right to use parks, squares or commons and beaches and the shores. These public rights are discussed and delineated in 2 *American Law of Property*, Ch. IV, "Public Rights," and in 3 *American Law of Property*, §§ 12:31-12:34. The easement which a governmental body may have for facilitating the passage of water, sewage, gas or electricity would necessarily be a public easement.

The close point in the case is whether the easement which a public service corporation has to permit the passage of cars or to facilitate the transmission of water, sewage, oil, gas, electricity and sludge so as to enable it to fulfill its function of serving the public is a public easement.

Easements held by a public utility or a public service corporation which are devoted to public use undoubtedly have analogies to, and points of similarity with, the public easements we have enumerated but they have significant differences, too. Commentators and cases have found similarity in the fact that a public service corporation constitutionally can condemn an easement in private property for the furtherance of the exercise of its franchise only for a public use and some, therefore, have equated a public easement to a public use.

We think the easement here involved was a private easement or, at the most, only a quasi public easement. A private easement ordinarily has a dominant tenement to which the right belongs and a servient tenement upon which it rests.[2] 3 Tiffany, *Real Property*, § 758 (3d ed.). A public easement is appurtenant to nothing, having no dominant tenement, and is an easement in gross. *Maryland & Pa. R. R. Co. v. Silver*, 110 Md. 510; 28 C. J. S. *Easements* § 3 (e).

*Consolidated Gas Co. v. Baltimore City*, 101 Md. 541, 545-46, held that if the Gas Company by purchase or condemnation

---

2. Tiffany also points out that:

"A right or interest in another's land may, however, exist as an irrevocable personal right, apart from any particular dominant tenement, and in this country the possibility of the existence of a personal privilege in the nature of an easement or, as it is usually termed, of an 'easement in gross,' has been freely recognized." 3 Tiffany, *Real Property*, § 758, p. 204.

had secured the right to lay its mains through private property it would have acquired an easement—"an estate or interest in lands" subject to assessment and taxation. The Court there, in holding that similar easements in the beds of streets were taxable as property of the Gas Company, indicated that both the easement in the street and the easements in private land would be private easements, saying: "In every instance of a private easement—that is, an easement not enjoyed by the public —there exists the characteristic feature of two distinct tenements—one dominant and the other servient." It then contrasted a franchise and asked: "To which of these two distinct and dissimilar classes does the right of the Gas Company to occupy with its mains the subsurface of the streets belong, in the contemplation of the revenue and tax laws of Maryland?" The holding was that the Gas Company held an easement which had a dominant and a servient tenement. A sequel was the case of *Consolidated Gas Co. v. Baltimore City*, 105 Md. 43, 61, which dealt with the method of valuing for taxation the easements the earlier case had found to exist. The Court said explicitly that the beds of the streets were the servient tenements and referred to easements for telephone, light and power transit as similar to those of the Gas Company. See also *Southern Bell Tel. & Tel. Co. v. Southern Precision Pattern Wks.* (5th Cir.), 251 F. 2d 537, 539, n. 2; and *Elyton Land Co. v. South & North Alabama R. Co.* (Ala.), 10 So. 270, 271, holding that interests in land devoted to public use were the private property of the utility owning them. Other authorities hold that while an easement of a public utility devoted to a public use is in a sense a public easement since it was acquired and is used for a public purpose, it is the private property of the utility and cannot be condemned for a different public use without payment of just compensation. 2 Nichols, *Eminent Domain*, § 5.4 [1].

We think the Legislature in using the phrase "public easements" in § 112 of Art. 81 did not intend to include easements owned by utilities privately operated for profit (even though publicly supervised), and did not equate the concept of a public easement with that of a public use. We are persuaded of this in part because of the holdings in the *Gas Company* cases, dis-

cussed above, and in part because § 97 of Art. 81 of the Code (1957), under the subtitle "Foreclosure of Rights of Redemption by Equity Suits," provides that the provisions of the following sections of this subtitle (§ 112 being within the subtitle) "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the equity courts and for the decreeing of marketable titles * * *." *Thomas v. Kolker,* 195 Md. 470, 475, emphasized that the Legislature has declared that the public interest in marketable titles outweighs considerations of individual hardships in tax sales except upon a showing of lack of jurisdiction or fraud. To follow the command of § 97 to be liberal in construction in order to make the title marketable, we must construe the term public easement narrowly rather than broadly, if this is, as we think it is, fairly and reasonably possible.

*Decree affirmed, with costs.*