MACHT AND MACHT, TRUSTEES U/W OF MORTON MACHT
*v.* DEPARTMENT OF ASSESSMENTS
OF BALTIMORE CITY

[No. 16, September Term, 1972.]

*Decided November 8, 1972.*

*Motion for rehearing filed November 30, 1972; denied December 6, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.,

and JERROLD V. POWERS, Associate Judge of the Court of Special Appeals, specially assigned.

*John S. McDaniel, Jr.,* with whom were *Calhoun Bond* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellants.

*Ambrose T. Hartman, Deputy City Solicitor,* with whom were *George L. Russell, Jr., City Solicitor,* and *Charles Freeland, Assistant City Solicitor,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. BARNES and DIGGES, JJ., dissent and BARNES, J., filed a dissenting opinion in which DIGGES, J., concurs at page 616 *infra.*

This case poses a novel question, apparently one of first impression in this State: Are there circumstances where airspace superjacent to real property may be made the subject of a separate assessment on which state and local real estate taxes can be levied?

The hoary common law concept, *cujus est solum, ejus est usque ad coelum et ad inferos,*[1] has been substantially eroded by technology.[2] For example, Maryland Code (1957, 1968 Repl. Vol.) Art. 1A, § 7, while recognizing that ownership of space above lands and waters is vested in the owners of the surface, subjects the ownership, however, to the right of others to fly aircraft over lands and waters in any fashion which does not interfere with the use to which the surface and the airspace over it is then being put. Judge Delaplaine, speaking for the Court in *Friendship Cemetery v. Baltimore,* 197 Md. 610, 621-622, 81 A. 2d 57 (1951), articulated the modern view:

---

1. To whomsoever the soil belongs, he owns also to the sky and to the depths, *see* I Coke upon Littleton L.1.C.1. Sect. 1.4.a (1st Am. ed. 1853).

2. Mr. Justice Douglas, in *United States v. Causby, infra,* 328 U. S. at 261, concluded "that doctrine has no place in the modern world."

"It is true that if a landowner is to have full enjoyment of his land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected. The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land."

This quotation is substantially taken from *United States v. Causby*, 328 U. S. 256, 264, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946).

As a consequence, the owner of land in fee holds all the complex elements of a single right, a bundle of sticks, if you will, which include not only the right to use the surface, but so much of the superjacent airspace as he can use, as well as the subjacent reaches below. And it is obvious that when a landowner utilizes his airspace for the erection of a building, or quarries or mines below the surface, such use will ordinarily enhance the market value of his property as well as its value for purposes of taxation. Here, however, the question is, what are the tax consequences if he leases his airspace to another?

Philip Macht and Sophia Romm Macht (the Machts), as trustees, hold fee simple title to the property at 11-13 East Fayette Street in Baltimore City, fronting 24 feet on Fayette Street with a depth of approximately 113 feet, improved by a small building some 100 feet in height. In 1961, Charles Street Development Corporation (the Blaustein Building) determined to erect a multi-storied office building on property immediately to the west of that now owned by the Machts. Apparently aware that the doctrine of ancient lights had been rejected by our predecessors, *Cherry v. Stein*, 11 Md. 1, 21-22 (1857), some positive assurance that the building's eastern face would have unimpeded access to light and air was a problem of immediate concern. To that end, the Blaustein Building opened negotiations with the Machts' predecessor in title. These culminated in an agreement under which the Machts' predecessor leased to the Blaustein

Building the airspace over 11-13 East Fayette Street above an altitude of 124 feet. The lease term was 98 years and nine months from 1 April 1961, without provision for extension or renewal. The rent from and after 1 January 1962 was fixed at twice the annual real estate taxes imposed on the "entire property" at 11-13 East Fayette Street, "(land, improvements and airspace)" less any increase in taxes attributable to improvements made by the Machts' predecessor, but not more than $8,000.00 or less than $2,000.00 in each of the calendar years 1962 through 1970.

While the lease gave the Blaustein Building two purchase options and reserved a sale option to the lessors, only two of the options are significant here: the right of the Blaustein Building to purchase the airspace at the end of the lease term for a base price of $100,000.00, adjusted, however, for fluctuations in the purchasing power of the dollar, and the obligation of the Blaustein Building to purchase the fee, the improvements and the airspace for $200,000.00 if demanded by the Machts.

The Department of Assessments of the City of Baltimore (the City) first endeavored to value the airspace and place the valuation on the assessment rolls for the fiscal year ended 30 June 1966. For procedural reasons not here important, the City's efforts came to naught, and two years passed until the "air rights" were valued at $50,700.00 and placed on the assessment rolls at that figure for the tax year ended 30 June 1969.

The Machts appealed to the City's Board of Municipal and Zoning Appeals (the Board), which vacated the assessment. The City, in turn, appealed to the Maryland Tax Court (the Tax Court), which reversed the Board, and reinstated the assessment. The Machts then entered this appeal from the order of the Tax Court.

The Machts advance three arguments why the order of the Tax Court should be reversed. We shall consider each of them:

**(i)**

*"The Department of Assessments of Baltimore City has no authority to value and assess 'Air Rights Only' as a class or subclass of real property separate and distinct from all other interests in the land under such 'Air Rights Only.' "*

The thrust of this argument is postulated upon Article 15 of our Declaration of Rights, which provides, in part:

". . . [T]he General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; . . . ."

and upon Code (1957, 1969 Repl. Vol.) Art. 81, § 19 (a), which provides:

"In valuing and assessing real estate, the land itself and the buildings or other improvements thereon shall be valued and assessed separately; . . . ."

\* \* \*

"In case of the separate ownership of the surface of land and of minerals or mineral rights therein, the assessing authority may, in its discretion, make separate rate assessments of the value of the surface and of such minerals or mineral rights."

Taking these provisions as a starting point, the Machts then pin their hopes on *State Tax Commission v. Gales,*

222 Md. 543, [referred to as *State Tax Commission v. Wakefield* in] 161 A. 2d 676 (1960), which struck down, as a constitutionally impermissible subclassification, Code (1957) Art. 81, § 19 (b), the "Farm Assessment Act" which purported to direct that land used for agricultural purposes be valued as such for purposes of assessment for taxation.[3]

It seems to us that this argument confuses the concepts of the separate classification of real and personal property and of the sub-classification of personal property contemplated by Code, Art. 81, § 14 (a) with a consideration of the elements of fee simple ownership which, in the aggregate, may be equated with the "full cash value" of real property statutorily mandated for purposes of taxation by Art. 81, § 14 (b) (1).

What *State Tax Commission v. Gales, supra,* struck down was an effort to value land used for agricultural purposes at a lesser figure than similar land used for other purposes. Nor do we find any validity in the argument that the Code provision authorizing the separate assessment of mineral rights effectively precludes the separate assessment of other rights which together may comprise fee simple ownership. The provision for the separate assessment of mineral rights is directed at the situation where the surface is in one ownership and the mineral rights in another. We are simply not persuaded that an assessment based on the separate valuation of a property owner's several rights is a classification at all. Indeed, situations may be postulated where a fair and equitable valuation can only be achieved by the use of this mechanism. It has long been established that assessors have reasonable latitude in selecting a method of valuation, so long as they arrive at the "full cash value," *Weil v. Supervisor of Assessments,* 266 Md. 238, 292 A.

3. Code (1957, 1969 Repl. Vol.) Art. 81, § 19 (b) which achieves the same result, was enacted by Ch. 455 of the Laws of 1961, after the 1960 amendments to Article 15 and Article 43 of the Declaration of Rights. *Supervisor v. Alsop,* 232 Md. 188, 192 A. 2d 484 (1963) upheld the new law.

2d 68 (1972), *Sears Roebuck v. State Tax Comm.*, 214 Md. 550, 557-558, 136 A. 2d 567 (1957).

Our predecessors noted in *Consolidated Gas Co. v. Baltimore*, 105 Md. 43, 65 A. 628 (1907) that while an easement ordinarily has a value less than that of the servient estate, in unusual circumstances the easement may exceed the servient estate in value. The example cited was a small parcel of land in a desert on which was located a flowing well. While in the usual case, the granting of an easement may diminish the value of the servient estate, there are instances where the servient estate may enhance in value. A classic example may be found in the case of land so located that the site is capable of being used for water power, *Slatersville Finishing Co. v. Greene*, 40 R. I. 410, 101 A. 226 (1917) and the availability of water power is a component of assessable value, even when not used, and if used elsewhere, may be an addition to the value of both the site where it is found and that where it is used. An example where the value of the servient estate is not diminished is the grant of a street railway easement over a privately owned bridge, *State v. St. Louis & E. St. L. Electric Ry. Co.*, 279 Mo. 616, 216 S. W. 763, 765 (1919).

An argument almost on all fours with that advanced by the Machts was made in *Susquehanna Power Co. v. Tax Commission*, 159 Md. 334, 151 A. 29 (1930), *aff'd* 283 U. S. 291, 51 S. Ct. 434, 75 L. Ed. 1042 (1931). In that case, the power company appealed from an order of the State Tax Commission which had assessed 2,110 acres of land, submerged under the lake created by the Conowingo Dam, at $2,349,300.00. One of the power company's contentions was that the submerged lands which the power company owned could not be considered for assessment purposes separate and apart from the water which flowed over them, which it did not own. The Court disposed of this by a simplistic analogy to a bowl of milk, where the bowl had one owner and the milk another. The Court went on to hold that the separation of the power company's ownership into its component parts

and the separate valuation of the parts did no injustice to the taxpayer so long as the value of the whole was the sum of the value of the parts.

Here, the Machts seem to concede that the revenue derived from the lease of the airspace could properly be considered, like any other rent, in reaching a valuation of the property as a whole. Under the teaching of *Susquehanna Power*, we see no reason why land, improvements and airspace could not be separately valued for assessment purposes, so long as the sum of the elements did not exceed the value of the whole. *See* Note, *Conveyancing and Taxation of Air Rights,* 64 Colum. L. Rev. 338, 350-354 (1964).

The Tax Court advanced an additional argument which is not without merit: that in separately valuing the airspace, the City was acting to reach "escaped" property as permitted by Code, Art. 81, §§ 34 and 36 which permit the value of escaped property, upon discovery, to be added to an assessment upon which levy has already been made.

### (ii)

*"If the Department of Assessments may lawfully value and assess 'Air Rights Only' as a class or subclass of real property separate and distinct from all other interests in the land under such 'Air Rights Only', it may not constitutionally (a) value and assess, and thereby subject to taxation, only those 'Air Rights Only' which have been leased by the owners thereof to other persons for the benefit of other real property owned by such other persons without (b) also valuing and assessing, and thereby subjecting to taxation, those 'Air Rights Only' which are utilized by the owners thereof for the benefit of real property owned by such owners other than the land under such 'Air Rights Only.' "*

We turn now to the Machts' second argument, which we find equally unpersuasive: they say that had the

Blaustein Building bought 11-13 East Fayette Street as a protective measure, the use of the airspace superjacent to the property would not have been the subject of a separate assessment. They buttress this argument by citing other examples of such use in downtown Baltimore.

We regard the City's rejoinder as reasonable and acceptable. The City concedes that if the Blaustein Building had *owned* 11-13 East Fayette Street, no assessment would have been placed on the airspace above it, because the airspace would not have produced income, as the Machts' did. But John G. Arthur, Director of the City's Department of Assessments, testified that the fact that the Blaustein Building under such circumstances, would have had unimpeded access to light and air on most of its east front would have been taken into account in reaching an assessable basis for the Blaustein Building, since the availability of light and air would be "reflected" in the rentals, and accordingly, in value.

In the case before us, the Blaustein Building's unimpeded access to light and air on most of its east face was assured, not by its ownership of 11-13 East Fayette Street, but by the exclusive right to the airspace which it acquired under the lease. Here again, this was reflected in the rentals as well as in the valuation for purposes of assessment.

### (iii)

*"If the action of the Department of Assessments of Baltimore City in valuing and assessing 'Air Rights Only' at 11/13 East Fayette Street in addition to valuing and assessing the land at 11/13 East Fayette Street is to be regarded as merely an administrative device for making a single valuation and assessment of the land at 11/13 East Fayette Street which is comprised of the sum of (a) the valuation and assessment designated as 'Air Rights Only' plus (b) the valuation and assessment designated as*

> *'land', such single valuation and assessment in those cases where the 'Air Rights Only' have been leased by the owners thereof to other persons for the benefit of real property owned by such other persons may not constitutionally be at a higher proportion of value than the assumed or actual single valuation and assessment in similar cases where the 'Air Rights Only' are utilized by the owners thereof for the benefit of real property owned by such owners other than the land under such 'Air Rights Only.'"*

Although the Machts' agreement with the Blaustein Building took the form of a lease, we prefer to regard the rights of the parties as they now stand, as most closely resembling those which would exist under a negative easement for a term of years, *see* 5 Restatement, *Property* § 452, at 2912, § 528 and Comment a, at 3186 (1944); 3 Powell, *The Law of Real Property* § 405, at 395 (Rohan ed. 1970); 2 *American Law of Property* § 9.12, at 372 (1952); 3 Tiffany, *Real Property* § 756, at 201 (3d ed. 1939), Combe, *Law of Light* at 5 (1911); 25 Am. Jur. 2d *Easements and Licenses* § 8, at 422 (1966), by which the owner of real property denies himself the use of one of the rights inherent in his ownership. In Maryland, this may be accomplished by words of grant or covenant, *compare Realty Corp. v. Safe Deposit & Trust Co.,* 160 Md. 457, 472, 154 A. 58 (1931) *with Knight v. Mitchell,* 154 Md. 102, 106, 140 A. 74 (1928) and *see* 3 Tiffany, *supra,* § 763, at 216, § 783, at 260; Annotation, *Express Easements of Light, Air and View* 142 A.L.R. 467 (1943) and 49 Am. Jur. 2d *Landlord & Tenant* §§ 174, 176, at 198, 200 (1970).

The City says that the rent reserved makes the arrangement more closely analagous to a *profit à prendre,* where a landowner receives payment for something taken from his land. It might be argued, too, that the agreement is more closely akin to a license. Regardless of how the arrangement may be characterized, the purpose it was intended to achieve remains the same.

In 52 Op. Att'y Gen. 425, 426 (1967), the Attorney General, in response to an inquiry from the State Roads Commission as to the propriety of disposing of unused airspace over highways, stated what we understand to be the law:

". . . The landowner's right to use and *develop* the airspace above his land is well established in Maryland, however, there is little authority concerning the right to *convey* or *lease* airspace. In other jurisdictions, the trend of authority definitely favors a liberal interpretation of the landowner's rights in airspace. The modern trend is to recognize airspace as an 'independent unit of real property', the owner of which is entitled to all the rights associated with land ownership. [Note], 64 *Columbia Law Rev.* 338 (1964). It appears that the prevailing authority would allow airspace to be conveyed, leased, subdivided, and have interests created in it, and estates carved out of it in the same manner as land." (emphasis in original)

*Cf.* Horizontal Property Act, Ch. 387 of the Laws of 1963, Code (1957, 1966 Repl. Vol.) Art. 21, §§ 117A-142, which provides that owners of units in condominiums take title in fee simple and sets up a mechanism for the assessment and taxation of the units.

So long as the Machts made no use of the airspace over their property, it was not, nor could it be made the subject of an assessment. Once they denied themselves the use of it for a price, it took on value for the purposes of assessment, a value which could be derived by an appraisal based on income, the option price, or both, *Bornstein v. State Tax Comm.*, 227 Md. 331, 337, 176 A. 2d 859 (1962). Concurrently, the Blaustein Building, as holder of the estate to which new rights became appurtenant, has the benefit of an easement, which could be reflected in its assessable basis, because the utility of its site was enhanced.

Usually, the existence of an easement diminishes the value of the servient estate, *Engel v. Catucci,* 197 F. 2d 597, 600 (D.C. Cir. 1952) ; *Tax Lien Co. v. Schultze,* 213 N. Y. 9, 106 N. E. 751 (1914) ; Nickols, *Real Property Taxation of Divided Interests in Land,* 11 Kan. L. Rev. 309, 320 (1963) ; King, *Assessment and Taxation of Easements,* 16 Wash. L. Rev. 36 (1941) ; 51 Am. Jur. *Taxation,* § 713 at 660 (1944), but this is not necessarily so, because there is no relationship between the amount by which the value of the dominant estate may be enhanced and the amount by which the value of the servient estate may be diminished, Bonbright, *The Valuation of Real Estate for Tax Purposes,* 34 Colum. L. Rev. 1397, 1436 (1934). Under certain facts, the value of the servient estate may not be diminished at all, and may even be increased, *Slatersville Finishing Co. v Greene, supra,* 101 A. at 231.

It should be remembered that this case reaches us in an unusual posture. The taxpayers' attack is levelled at the method by which valuation for tax purposes was reached, and not at the amount of the assessment. If the Machts can demonstrate that the sum of the values separately attributable to land, improvements and airspace exceeds the figure at which the property should have been assessed as a whole, *Susquehanna Power Co. v. Tax Commission, supra,* relief may be available. However, this point is not made here.

The Machts seem to find comfort in this Court's decisions in *Delmarva Power & Light Co. v. Eberhard,* 247 Md. 273, 230 A. 2d 644 (1967) and *Hill v. Williams,* 104 Md. 595, 65 A. 413 (1906), which held that an easement was extinguished by the sale of the servient estate for unpaid taxes. This is not only a minority view, *see* Comment, *Property—Effect of Tax Sales on Appurtenant Easement upon Servient Estate Sold for Delinquent Taxes,* 10 Wash. & Lee L. Rev. 84, 87 (1953) ; Note, 7 Miami Law Qtrly. 270, 271 (1953), but the holdings have been somewhat attenuated by the enactment of Ch. 69, § 1 of the Laws of 1967, Code, Art. 81, § 112, to the end

that a tax sale no longer extinguishes an easement of which the purchaser has actual or constructive notice.

The Machts cite these cases in support of their contention that an appurtenant easement is not assessed for tax purposes separately from the servient estate. The cases may more accurately be said to stand more for the propositions (i) that for tax purposes, the easement is included in the valuation of the servient estate and (ii) that absent the statute referred to, the sovereign cannot be charged with knowledge of private arrangements entered into between landowners. Moreover, the argument overlooks the situation where an easement in gross may exist in the absence of a dominant estate, and be taxed as such, as was the case in *Consolidated Gas Co. v. Baltimore,* 101 Md. 541, 549, 61 A. 532 (1905), 105 Md. 43, 57-62, 65 A. 628 (1907) and *Appeal Tax Court v. Western Maryland R.R. Co.,* 50 Md. 274, 301 (1879).

It certainly should have been no surprise to the parties that the practical effect of the lease of the airspace was the enhancement of the value of the servient estate because of the rent reserved. In fact, the terms of the agreement are ample proof that this very result was contemplated. In fixing the term of the lease at 98 years and nine months, the parties carefully skirted the provisions of Code (1957, 1969 Repl. Vol., 1971 Supp.) Art. 81, § 8 (7) (a) which provides that where a lease is for a term of 99 years or for a shorter term and perpetually renewable, the leaseholder pays the taxes just as if he owned the fee. Had the lease been for 99 years, taxes on the airspace would have been paid by the Blaustein Building directly, and would not have been included in the determination of the annual rent.

In setting up the formula upon which the rent was to be based, the parties carefully stipulated that the base rent was to be twice the annual real estate taxes on the "entire property" at 11-13 East Fayette Street "(land, improvements and airspace)." There was not only no element of surprise, but it may well be that the Machts are estopped from denying that the value of the air-

space was an element to be considered in the assessment process. It seems to us that whether the value of the airspace was separated out or included in the valuation of the fee for assessment purposes is indeed a distinction without a difference, so long as the aggregate value of the components does not exceed the value of the whole.

*Order affirmed, costs to be paid by appellants.*

*Barnes, J., dissenting:*

Although I agree with much—indeed most—of the majority opinion as an abstract matter, I dissent because the majority (1) largely ignores what the Department of Assessments actually did in the present case; (2) analogizes the lease to an easement which Maryland Code (1957) Art. 81, § 19 (a) provides, and prior decisions of this Court hold, shall not be separately assessed; and, (3) gives an oblique blessing to the argument of the Tax Court that the Department was acting to reach "Escaped" property, pursuant to Art. 81, §§ 34 and 36.

## (1)

In the present case, there is no dispute that the Department did not reassess the value of the Macht property, giving consideration to the lease, either as resulting in a diminution in its value by the leasing of the air rights for the long period of the lease or as a source of income which, upon an income theory of valuation, might result in an increase in the value of the property. The assessment here involved was designated as "Air Rights *Only*" (Emphasis supplied), and was a *separate* assessment. Indeed, Max L. Cohen, who is a senior assessor with the Department, worked on the assessment of the Macht property, 11/13 East Fayette Street, the Blaustein Building, as well as many other business properties in the general area of these properties. In his deposition, he stated that "we placed the assessment against air

rights as such because of it being a specific lease and a specific parcel of property that . . . came out of the agreement." When asked by counsel for the Machts whether, according to the records of the Department, there was any difference in the land assessment per square foot for the Macht property and the property which is immediately adjacent to the east, Mr. Cohen stated "There's no difference." This evidence is uncontradicted. It indicates that what has happened in this case is that the normal assessment of the Macht property—comparable in every way to that of the adjacent property to the east—which presumably reflected the full cash value of each respective property including all of the rights in those properties, has been maintained and continued by the Department but that a *separate and additional assessment* for the air rights only has been made for the Macht property *in addition to* the existing assessment. The Board of Municipal and Zoning Appeals of Baltimore City (Board), upon the Machts' appeal, reversed the Department and, to my mind, quite properly stated:

> "We have no doubt but that the General Assembly of Maryland can enact legislation providing for the assessment and taxation of 'Air Rights', separate and apart from other rights held by the owner in the land. However, the Legislature has not chosen to provide for the assessment and taxation of 'Air Rights' separate and apart from other rights, and consequently since it has not, the political subdivisions have no power granted to them to create this classification or any other classification not authorized by the Legislature. See *State Tax Commission v. Wakefield,* 222 Md. 543, 161 A. 2d, 676, and *Supervisor of Assessment for Montgomery County v. Alsop,* 232 Md. 188, 192 A. 2d, 494.
>
> "We do not mean to imply that 'Air Rights' are exempt from their fair share of taxes. We

do hold that the aggregate of rights in and to land totalling absolute ownership thereof, as well as the aggregate interest in buildings and improvements totalling absolute ownership thereof, each respectively must be assessed and taxed as an entirety.

"We hold that the Department has no authority to assess 'Air Rights' only as property separate and distinct from all other interests in real property to which such 'Air Rights' pertain."

What the Department has done in the instant case is to attempt to create a "classification" or "sub-classification" of land, *i.e.*, "Air Rights Only." This is a power which the General Assembly of Maryland has been given exclusively by Article 15 of the Declaration of Rights of the Maryland Constitution. The General Assembly has exercised this exclusive power in Art. 81 of the Code. In § 8 (1), it is provided that all real property in Maryland shall be "subject to assessment to the owner"; § 8 (6) provides that leasehold and other limited interests in real property shall not be subject to taxation except in certain enumerated instances in which the leasehold or other limited interest owner is treated as though he held the entire interest, taxes are assessed and levied to such holder of the limited interest as if he were the entire owner and the remaining interests are exempt from taxation. It is provided in § 19 (a) that in valuing and assessing real property, the land itself and the buildings or other improvements on the land *shall be valued and assessed separately,* but with a provision that in the "case of the separate ownership of the surface of land and of minerals or mineral rights therein, the assessing authority *may, in its discretion,* make *separate rate assessments* of the value of the surface and of such minerals or mineral rights." (Emphasis supplied)

It is apparent that the General Assembly has not authorized any assessing authority to make a *separate* val-

uation and assessment of "Air Rights" and, by enumerating the instances in which separate assessments of less than all of the rights in land may be made, has by implication excluded any others. *Inclusio unius est exclusio alterius. See American Security & Trust Co. v. New Amsterdam Casualty Co.*, 246 Md. 36, 40-41, 227 A. 2d 214, 216-17 (1967).

Our predecessors have indicated (consistent with the statutory provisions in Art. 81) that land subject to an easement created by the owner for the benefit of adjacent land continues to be subject to assessment without regard to the easement which is not subject to separate assessment, the assessing authority having no interest in private arrangements made between the landowner and the owner of the easement. *Hill v. Williams*, 104 Md. 595, 65 A. 413 (1906). *Hill* has been cited by the Court with approval in *e.g., Johns Hopkins University v. County Commissioners of Montgomery County*, 185 Md. 614, 617, 45 A. 2d 747, 748 (1946) and *Meade Heights v. State Tax Commission*, 202 Md. 20, 28, 95 A. 2d 280, 284 (1953).

As the majority observes, the Machts do not contend that the Department may not consider the value of the airspace lease in making the assessment for their property and concludes from this that it "sees no reason why land, improvements and airspace could not be separately valued for assessment purposes, so long as the sum of the elements did not exceed the sum of the value of the whole." With respect, this appears to me to be a *non sequitur.* True, land and improvements are separately assessed by virtue of the requirement of Art. 81, § 19. As already set out, however, there is no provision in Art. 81 that "Air Rights"—admittedly part of the rights in the land itself—shall be valued and assessed apart from the land; and by providing for separate valuation and assessment of mineral rights, the separate valuation and assessment of rights in the land other than minerals and buildings and other improvements are forbidden by Art. 81.

The difference between the majority and me on this

point is not a matter of semantics or mere form. By compliance with the provisions of Art. 81 in regard to valuing and assessing the land—including a consideration of the air rights as a possible element of value—the assessing authority must necessarily consider the diminution in the value of the land from the restriction of the use of the air rights for a very substantial period of time as well as any addition to the value of the land from a capitalization of net rental from the lease of those air rights. Logically, but not at all necessarily, in an arm's length transaction—and there is no suggestion that the lease involved in the instant case is not such a transaction—the diminution in value by the lease of the air rights should be roughly equivalent to the value of the rent reserved in the lease. At least, the Machts should have the opportunity to establish the factor of such diminution in value. It is clear, however, that they have had no such opportunity and the assessors, in fact, gave no consideration to such a factor.

## (2)

As I see it, the majority leans on a broken reed in analogizing the grant of air rights to a negative easement. As already pointed out, the decision of this Court in *Hill v. Williams, supra,* holds that there can be no valuation or assessment *separate* from the valuation and assessment of the fee simple interest in a fee simple property. The Department did indeed attempt to make a separate valuation and assessment of "Air Rights Only"; and if the grant of air rights is an "easement," its action is prohibited by the holding in *Hill.*

## (3)

The majority suggests (but does not hold) that there might be merit in the argument advanced by the Tax Court that the "Air Rights" could be valued and assessed as "Escaped property," pursuant to Art. 81, §§ 34 and 36. The escaped property procedure only applies

to property "which was not assessed, but which ought to have been assessed." The uncontradicted evidence is that the Macht land *was assessed* and this land included the air rights above the surface of the land. The lease of the air rights was duly recorded and the Department not only had constructive notice of the lease, but actual knowledge of its existence when the assessment of the land in the present case was made. There was no "subsequent discovery" of the air rights. *See Mid Towne Plymouth, Inc. v. State Dept. of Assessments & Taxation,* 228 Md. 66, 178 A. 2d 422 (1962). As already observed, the appraisers could have considered the diminution of the value of the land resulting from the lease of the air rights, as well as any increase in its value resulting from the rent reserved in the lease, when the assessment of the value of the land was made. It is not the fault of the Machts that this was not done. I cannot perceive how any later separate assessment of "Air Rights Only" could possibly be an assessment of "Escaped property" under the provisions of Art. 81, §§ 34 and 36.

For these reasons I would reverse the order of the Tax Court reversing the order of the Board of Municipal and Zoning Appeals and reinstate the order of that Board reversing the assessment in this case.

I am authorized to state that Judge Digges concurs in the views herein expressed.