THE CHICAGO UNION STATION COMPANY *et al.*, Plaintiffs-Appellants, *v.* BERNARD J. KORZEN *et al.*, Defendants-Appellees.—(EDWARD J. ROSE-WELL *et al.*, Defendants-Appellees.)—*In re* APPLICATION OF THE COOK COUNTY COLLECTOR.—(THE CHICAGO UNION STATION COMPANY, Objector-Appellant.)—*In re* APPLICATION OF THE COOK COUNTY TREASURER AND EX-OFFICIO COUNTY COLLECTOR.—(THE CHICAGO UNION STATION COMPANY *et al.*, Objectors-Appellants.)

First District (4th Division)    Nos. 80-562, 80-563 cons.

Opinion filed May 21, 1981.

Joseph A. Spitalli, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Lawrence Brodsky, and James F. Henry, Assistant State's Attorneys, of counsel), for appellees.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The plaintiffs, Chicago Union Station Company and certain other railroad companies, leased their air rights over railroad rights-of-way, which Cook County then taxed. The appellants sought a refund of the

taxes paid for years 1972-1976 contending that: (1) the assessor was without power or authority to assess air rights situated on the railroad rights-of-way; and (2) the land portion of the assessment resulted in double assessment and taxation of the same properties.

The trial court denied the refund. We affirm.

Plaintiffs, owners of railroad property, sought and obtained permission to lease the "airspace over a parcel of land" to Tishman Realty & Construction Co. Inc., pursuant to "An Act to Increase the Powers of Railroad, Union Depot and Terminal Companies" (Ill. Rev. Stat. 1963, ch. 114, par. 174a) which provides:

> "That whenever any railroad, union depot or terminal company is the owner, in fee of real estate susceptible of other than railroad uses without abandonment of such railroad uses, or different levels or parts of different levels of which real estate may be devoted to such other uses without unreasonable impairment of the use of the remainder for railroad purposes, or the part of said real estate above or under the part thereof needed in such company's railroad operations (with reasonable use of the surface and subsurface of said real estate for foundation and other incidental uses) may be utilized or developed for buildings or other structures to be used in other than railroad business, such railroad, union depot or terminal company may improve, utilize and develop the part of such real estate so susceptible of such other use or uses or the parts of which may be so separated for other uses, so as to obtain the benefit thereof and may subdivide the separate level or levels susceptible of such other uses into lots and blocks, construct elevated streets, walks and other appurtenances and facilities proper to such development; and may sell, convey and transfer to purchasers any separable part or parts (singly or combined) of such real estate, at, above or below the natural surface of the ground, susceptible of such other uses, or may lease to others such part or parts thereof as said company may at any time elect; Provided, that the plan of such development, improvement, utilization or other use (and any subsequent modification thereof), and the conveyance, transfer or lease proposed is in each instance first approved by the Illinois Commerce Commission and said Commission finds that the use of such part of said land or lands so susceptible of or separable for other uses will not unreasonably impair the use of the remainder of said real estate for railroad purposes."

This lease was later assigned, the same year, with the commission's approval to Tishman-Gateway Inc. and LaSalle National Bank. The legal description of the property leased included:

> "All that parcel of land, being that portion above the excepted

space, hereinafter defined, of that certain parcel of land in the County of Cook, State of Illinois, together with the buildings and improvements thereon, including the columns, foundations, gussets and supports thereof to be constructed within the excepted space bounded and described as follows."

The lease further provided that the term "demised area" consisted of the portion of the property of the lessor over and above the limiting planes and elevations and the portions of excepted space leased pursuant to paragraph 6, and that the excepted space was the space lying below or beneath the limiting plans and elevations. Paragraph 6 gave lessee the right to construct and maintain adequate columns, foundations, and other supports in the excepted space. It was expressly provided in the lease that the excepted space would be occupied and used by the lessor and various railroads for railroad purposes.

Valuable office buildings were built in the leased property. The lessees agreed to pay any taxes levied on the demised area.

Tracks and other operating property of a railroad are assessed and taxed by the Department of Local Government Affairs (DLGA) presumably at a lower rate. Property listed by the carrier as noncarrier real estate is, however, taxed not by the DLGA but by the county (Ill. Rev. Stat. 1971, ch. 120, par. 564), the DLGA simply certifying and forwarding the list to the local county assessment official for an assessment of the noncarrier real estate.

The plaintiffs listed the air rights involved as noncarrier real estate. Accordingly the DLGA forwarded the schedule to the Cook County Assessor. The operative railroad property bulk classification cards prepared by that office give the same legal description set forth in the schedule. Above the descriptions are the letters "(Ex R/W)" which mean except right-of-way. Furthermore, the legal descriptions, both in the schedule and on the cards referred to the "leasehold interest as shown in the document recorded in the recorder's office September 18, 1963." This document, as already noted, excluded (except for supports) the railroad right-of-way. At the bottom of the card was the notation "Land Valuation 90,591 sq. feet"—followed by the actual computation; the assessed valuations were set forth in boxes labelled in printing "land" and "building." There was no printed box for air rights nor was there space to add such a box.

As already stated the plaintiffs sought a refund of the taxes paid on the air rights, contending both that the assessment was unauthorized and that they were taxed twice on the same property. After considering the evidence, including certain depositions submitted by the parties, the court entered summary judgment for the defendants in a well reasoned opinion in which it made the following findings:

"3. That for each of the years involved in these cases, Plaintiffs made a return to the Department of Local Government Affairs of their 'non-carrier real estate' as required by Ch. 120 Ill. Rev. Stats., Sec. 564. That for each year the description furnished by Plaintiffs to the Department indicated that the return covered air rights and Plaintiffs' leasehold interest in the premises involved herein under the various recorded leases. That for each year the Department transmitted to the Assessor of Cook County the list of 'non-carrier real estate' furnished to the Department by Plaintiffs, and that for each year the Assessor made an assessment of the property included on the list furnished him by the Department, all as provided by statute.

4. That air rights above the operating property of railroads are severable from the operating property and may be sold or leased by railroads as a separate estate with the approval of the Illinois Commerce Commission under the provisions of Ch. 114, Ill. Rev. Stats., Sec. 174a. That by reason of this statute, such air rights, when severed, have all of the characteristics of real estate, such as the capability of being sold, leased, subdivided and developed are separate from the underlying estate on the ground and constitute real estate.

5. The assessment made by the Assessor was of the air rights certified to him by the Department under the description of 'non-carrier real estate' and was not an assessment of land. That the assessment of these air rights was carried on the assessment rolls as land is irrelevant in that the Assessor is under a statutory duty to list 'non-carrier real estate' under the terms 'land' and 'lots'. Ch. 120, Ill. Rev. Stats., Sec. 564.

6. That by reason of the determination of the Illinois Commerce Commission that the air rights were not currently used of [sic] useful in the operation of Plaintiffs' railroad business, such air rights ceased being 'operating property' of the petitioners, as that term is defined in Ch. 120, Ill. Rev. Stats., Sec. 560(2).

7. The 'operating property' of Plaintiffs was assessed by the Department of Local Government Affairs. The term 'non-carrier real estate' by definition excludes 'operating property' and all that was assessed by the Assessor was the 'non-carrier real estate' certified to him by the Department. Since no attempt was made by the Department to assess what it had certified to be 'non-carrier real estate', it follows that there was not a double assessment of the real estate within the definition of the term 'twice assessed' in *Cooper v. Kanaley & Co. v. Gi*, [sic] 363 Ill. 418.

8. By reason of the severance of the air rights from the operating

property of Petitioners, the air rights became a separate estate *above* the right of way of Plaintiffs and constituted 'Non-carrier real estate' not situated on the right of way of Plaintiffs within the meaning of Ch. 120, Ill. Rev. Stats., Sec. 560(4). This separate estate above the right of way was assessable as real estate by the Assessor and such separate estate was not assessed before it became taxable.

9. In reaching the above conclusions, the Court has relied solely on its interpretation of the meaning of the relevant statutes. There are, however, two other general propositions that have relevance in these matters. The first is that the Plaintiffs themselves scheduled their air rights leasehold estate as 'non-carrier real estate' and probably should be bound by their own interpretation of its assessable status. (*Iowa Central Ry. Co. v. The People*, 156 Ill. 373). The second is that for more than fifty years both state and local assessment officials have regarded air rights above railroad property, when severed, to be assessable as 'non-carrier real estate' and their interpretation has been acquiesced in by the taxpayers. Substantial weight should be accorded such long standing interpretations. (*Radio Relay Corp. v. Illinois Commerce Commission*, 69 Ill. 2d 395)."

I

■■ ■ In light of the fact that the plaintiffs repeatedly scheduled the property as a noncarrier real estate, we agree with the trial court that they are bound by this construction and cannot here deny its assessable and taxable status under section 83 of the Illinois Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 564), which provides for the assessment by the county of all noncarrier real estate. (*Iowa Central Ry. Co. v. People ex rel. Vernon* (1895), 156 Ill. 373, 40 N.E. 954.) But even absent such scheduling, we would agree with the trial court that the air rights were noncarrier real estate assessable and taxable by the county assessor.

Under the Illinois Revenue Act of 1939 air rights in general are taxable. Section 1(13) of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 482(13)) defines real property which is generally taxable under section 18 (Ill. Rev. Stat. 1971, ch. 120, par. 499), as "Not only the land itself, * * * but also * * * all rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this Act." Plaintiffs however contend that the air rights here are not taxable by the county assessor because only 'non-carrier real estate' can be taxed by the county. Section 79(4) of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 560(4)) provides:

"(4) The term 'non-carrier real estate' shall mean and include all land, and improvements on such land, not situated on the right of way of said railroad and not used as operating property within the meaning of the definition set out above in paragraph (2). Improvements owned by others and situated on the right of way not used in the operations of said railroad shall be deemed to be 'non-carrier real estate.' "

The plaintiffs do not deny that the air rights are not used as operating property, that is property connected with or used in the operation of the railroad. (Ill. Rev. Stat. 1971, ch. 120, par. 560(2).) Rather the plaintiffs contend that the air rights were on the right-of-way and therefore are not taxable since only improvements on the right-of-way may be taxed by the county.

An air right is defined by the Random House Unabridged Dictionary of the English Language (1966) as:

"1. a right-of-way in the airspace owned by a person over his land * * *. 2. such a right sold or leased for use or occupation esp. on a support elevated above an immovable property, as for the erection of an office building over a railroad track."

It is clear from the definition that air rights are "over" not "on" the right-of-way and this has been recognized by the persons interested in the transactions involved here. The Commission in granting its approval to the assignment of the lease referred to the "lease Agreement covering the airspace over a parcel of property." The lease demises the portion *above* the excepted space, *i.e.*, the right-of-way. The only exception was that columns, foundations and supports could be constructed within the excepted space.[1] The sketch of the development included in the record shows the air rights plane to be well above the track level. And the plaintiffs in the briefs even stated that "each of the subject properties was constructed in air rights *situated over railroad rights-of-way* under leases granted by the petitioner railroads." (Emphasis added.)

Plaintiffs however contend that defendant admitted that the air rights were on not above the right-of-way when it admitted the truth of certain of the plaintiffs' allegations including the following two statements:

"Pursuant to the above lease, a platform, plaza and two-commercial buildings * * * were constructed in the demised area. The demised area is on and over the rights of way of petitioners."

"Pursuant to the above lease, a platform, plaza and commercial building * * * was [*sic*] constructed in the demised area. The

---

[1] These of course are improvements and it is clear from the statute that improvements owned by another are taxable even if on the right-of-way. Plaintiffs do not object to the taxation of the improvements.

demised area is supported by and over the rights of way of petitioner."

Plaintiffs overlook the fact that the allegations admitted to did not refer solely to the air rights but to the whole demised area. That area as already noted included not only the air rights, that is the portion above the excepted space, but also area within the excepted space where columns, foundations and supports, that is improvements, could be erected. Accordingly the defendants cannot be deemed to have admitted that the air rights in this case, contrary to their common-sense and universally recognized meaning, were on rather than over the right-of-way.

Since it is clear from both the evidence and the recognized meaning of the term "air rights" that while the improvements were both on and over the right-of-way, the air rights were above it, it follows that the air rights were "not situated on the right-of-way of said railroad and not used as operating property." Accordingly, they were properly taxed as noncarrier real estate. This conclusion is supported, as the trial court noted, by the fact that for more than 50 years both State and local assessment officials have regarded air rights above railroad property, when severed, to be assessable as "non-carrier real estate" and their interpretation had been acquiesced in by the taxpayers.

## II

The plaintiffs alternatively contend that they were taxed twice on the same property. It is uncontested that the DLGA taxed the right-of-way. The plaintiffs contend that the county in taxing the "land" was taxing the identical property taxed by the DLGA. In making this contention the plaintiffs rely on the following factors:

1. The various records used by the assessor's office, including the property record cards, railroad assessment cards, block covers, nowhere referred specifically to air rights but only to "land" and "improvements." The Railroad Assessment Cards contain two printed columns: one for the assessed value of land; one for the assessed value of improvements. There is no other column for air rights. Those cards also disclose that the "Land Valuation" was determined by multiplying the value per square foot by the square footage of the property.

2. The plaintiffs contend that the county assessor did not use a proper method for computing air rights but instead used the same method used for computing land values. The plaintiffs point to such facts as the fact that the railroad assessment cards valued the land on a square footage basis and that the chief deputy assessor in his depositions admitted that the property was assessed on a dollar-per-square-foot basis; a basis he admitted was in some instances used to value land. Plaintiffs further contend that the assessor's Land Pricing Maps establish that the formula

for the assessment of land in the vicinity was the same as the formula used in assessing plaintiff's air rights. Finally the plaintiffs contend that "the value of air rights cannot be determined by simplistically applying a dollar figure to square footage" but must be done by a much more complicated formula, citing various law reviews, and that therefore the assessor could not have been assessing the air rights when he made the computation.

As already discussed, plaintiffs scheduled the air rights leasehold estate as noncarrier real estate. The DLGA taxed the railroad right-of-way and forwarded the description of the air rights to the county to be taxed. This description was adopted and set forth on the Railroad Assessment Cards as the legal description of the property to be taxed. The description specifically referred to the leasehold interest as shown in the recorded documents; as we have already noted, these leases demised air rights and not the right-of-way except for the right to use certain parts of the excepted area for supports, *i.e.*, for improvements. Furthermore, the Railroad Assessment Cards specifically stated that the right-of-way was excluded. Thus it is clear from the legal description on the card that it was the leasehold interest, that is the air rights, which were being taxed and not the right-of-way of the railroad.

The fact that the valuation was referred to as a "land" valuation and was put in a box with the printed title "land" does not compel a contrary conclusion in light of the fact that there was no box entitled "air rights." The deputy assessor stated in his deposition that the assessment was one of air rights but that it was put in the "land" box simply because there was no air rights legend on the preprinted forms. Furthermore, as the trial court pointed out, the assessor is under a statutory duty to list "non-carrier real estate" under the terms "land" and "lots."

■■ In light of the fact that the county only purported to assess and tax the leasehold interest, that is, the air rights and improvements, and specifically excluded the right-of-way from the property being assessed, it is immaterial whether the assessor used the proper method for computing the tax since the plaintiffs are not complaining here as to the amount of the tax but are only contending that they were taxed twice on the same property. It is well established in Illinois that an overvaluation is not double taxation and that as long as the property is correctly described there is no double taxation even if the assessor in computing the value of the described property improperly includes other property already taxed. (*Anglo-American Provision Co. v. Lindheimer* (1937), 367 Ill. 193, 10 N.E.2d 805; *Cooper v. Kanaley & Co. v. Gill* (1936), 363 Ill. 418, 2 N.E.2d 707.) In *Anglo-American* the plaintiffs owned two lots, both of which contained a railroad right-of-way. The right-of-way was assessed as railroad property, and the transit company paid the taxes on it. The lots

were also listed on the county assessment books. The right-of-way was excepted in the description of both parcels. In fact, however, no deduction was made from the gross footage for the area of the right-of-way owned by the transit company, *i.e.*, the valuation of the land included the valuation of the right-of-way. The Illinois Supreme Court, citing *Cooper* as controlling, held that since the only property described in the assessment books was the lots excepting the right-of-way, the error could not be considered to amount to assessing the right-of-way property twice but was only an overvaluation.

In *Cooper*, while the property was correctly described, the assessor in computing the value of the land and buildings included a three-story hotel building which was actually on another lot. The Illinois Supreme Court in rejecting the claim of double taxation stated:

"Under our Revenue act an assessment denotes the fixing of value of property for the purpose of applying a tax rate or rates thereto and so arriving at the amount of taxes to be extended against it, as distinguished from over-assessment or so-called double assessment. 'Twice assessed,' within the meaning of section 268, means that the assessor has fixed the value once for the purpose of taxation and has entered that value on the assessment books as the assessment against a designated tract, and that either such assessment has through error or otherwise been again entered on the assessment records, or that the assessor or some other assessing body claiming jurisdiction to assess the same property for taxation has again fixed the value of the same property for the purpose of taxation. The language of section 268 does not admit of extending or enlarging its plain provisions beyond their clear import." 363 Ill. 418, 422, 2 N.E.2d 707, 709.

In addition, it has been held in analogous situations both by our Illinois Supreme Court in *Goodyear Tire & Rubber Co. v. Tierney* (1952), 411 Ill. 421, 104 N.E.2d 222, *cert. denied* (1952), 344 U.S. 825, 97 L. Ed. 642, 73 S. Ct. 24, and by this court in *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 366 N.E.2d 585, that even if the assessor used the wrong formula in assessing land owned by a tax-exempt entity and leased to a non-exempt entity, the assessment and tax was not one of the exempt fee interest. As the supreme court stated in *Goodyear*:

"But it is contended that all appellant acquired was a leasehold interest, and that when the assessors based the assessment on the value of the freehold in assessing appellant, that, in effect, was taxing exempt property. We do not believe that such a position is tenable. As previously stated, appellant did have a taxable interest whatever its nature or value. An assessment to appellant based on the value of the freehold could be said to be an erroneous and

excessive assessment but it is not tantamount to an attempt to tax exempt property. The property was exempt from taxation only in the hands of the United States government and not in the hands of the lessees. However erroneous the action of the assessors may have been in assessing the interest of the Goodyear Company by valuing it at the full value of the fee, any objection to their action goes only to the amount of the assessment and affords appellant no basis for a claim to exemption." (41 Ill. 421, 428, 104 N.E.2d 222, 225.)

It follows from these cases that even if the formula employed by the assessor was incorrect and could only be properly utilized to compute land valuations, a question we do not rule upon, the assessment was still one of the air rights and improvements as set forth in the legal description on the assessment cards and there was no double taxation. Since the plaintiffs have not, at least on appeal, protested the amount of the tax as opposed to the legality of the tax, that question is not before us.

Accordingly the judgment of the trial court is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.