533 A.2d 778

In Re: Appeal of Anton W. Bigman and Ingrid E. Bigman From Action of the Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, on Property Situate in the City of Pittsburgh. County of Allegheny, Appellant.

Argued October 13, 1985, before Judges ROGERS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three. Reargued September 10, 1986, before President Judge CRUMLISH, JR., Judges MACPHAIL, DOYLE, COLINS and PALLADINO.

*D. R. Pellegrini,* with him, *Ira Weiss,* Deputy County Solicitor, and *James H. McLean,* County Solicitor, for appellants.

*Anton W. Bigman,* for appellees.

OPINION BY JUDGE PALLADINO, October 29, 1987:

The County of Allegheny (Appellant) appeals from a decision of the Court of Common Pleas of Allegheny County which held that condominiums and their included air rights are to be taxed as buildings and not as land.

The facts are not in dispute. Anton W. Bigman and Ingrid E. Bigman (Taxpayers) own two condominiums in the city of Pittsburgh. The units are part of a nineteen story complex known as The Tower A Condominium at Chatham Center. The land which underlies the condominium is separately owned by another entity,[1] is assessed to the Prudential Insurance Company, and Prudential pays the taxes on the land at the millage rate applicable to land in the City of Pittsburgh.[2] As shall

---

[1] There is some confusion as to exactly who owns the land. What we gather from the record, which is nowhere near as complete as one might expect in a case of this magnitude, is that Prudential has purchased part of the land from the Urban Redevelopment Authority (URA) and has an option to purchase the remainder of the complex. N.T. at 8-9; 16-17; 29-30. Appellant suggests that URA is the actual owner of the land but that Prudential is the beneficial owner. Brief for Appellant at 17, note 1. The trial court found that the land is owned by an entity other than the Taxpayers. Trial Court Op. at 2. We note that the parties stipulated that only air rights were conveyed to Taxpayers and, therefore, the details of who owns the land are irrelevant to our determination. It is sufficient, for our purposes, that Taxpayers own none of the land in question.

[2] Appellant makes a contention that Prudential is an indispensable party. Appellant argues that a holding in favor of the Taxpayers will result in a change in the taxes owed by Prudential. Appellant suggests that if the air rights owned by Taxpayers are not taxable as land, then Prudential owns a remainder interest in air rights which must be taxed as land. This issue, at least as presented by Appellant, would negate the very question before us—whether air rights are taxable as land. A holding in favor of Taxpayers will not provide Appellant with the opportunity to tax air rights as land against someone other than Taxpayers; instead, such a holding will

become clear, the millage rates in force in the City of Pittsburgh play an important role in the present case. In order to understand the reasons for this appeal, one must bear in mind that the City of Pittsburgh applies a much higher millage rate to land assessments than to building assessments, pursuant to the act of March 7, 1901, P.L. 20, art. VI, *as amended,* 53 P.S. §25894 (hereinafter §25894 of the Second Class City Act).[3]

The horizontal split in ownership described above forms the foundation for the dispute in the present case. The parties stipulated at trial that only air rights were conveyed with the condominium units, and that no surface rights were transferred.[4] However, the parties

---

preclude the assessment of air rights as land against anyone. Thus, we fail to see how the decision in this case can have an effect requiring that Prudential be made a party.

[3] Pittsburgh is a city of the second class, making §25894 of the Second Class City Act, 53 P.S. §25894, applicable. The section provides, in full:

> §25894. **Classification of real estate; assessments; rates of taxation**
>
> They shall classify all real estate in the city in such manner, and upon such testimony as may be adduced before them, so as to distinguish between the buildings on land and the land exclusive of the buildings, and to certify to the councils of said city the aggregate valuation of city property subject to taxation. It shall be the duty of said councils, in determining the rate for each year hereafter, to assess a tax upon the buildings equal to five-tenths of the highest rate of tax required to be assessed for each such year respectively, so that upon the said classes of real estate of said city there shall, in any year, be two rates of taxation.

[4] The unit owners have easements for, *inter alia,* ingress and egress through the commercial property. The Tower A Condominium at Chatham Center—Public Offering Statement.

disagree as to how the air rights are to be classified for taxation purposes.[5]

Section 1 of the Act of June 15, 1939 (Second Class City Act), P.L. 346, *as amended*, 53 P.S. §25891 mandates that county assessing authorities distinguish between buildings on land and the land exclusive of the

---

[5] Appellant has argued that this issue is not properly presented for our review. We disagree. The trial transcript clearly indicates that counsel for the Board of Property Assessment stipulated to this very issue:

> MR. SILVESTRI [Counsel for the Board]: Furthermore, it would be stipulated by and between the parties that the deed from U.R.A. to Prudential conveys all surface rights and that no surface rights but only air rights were conveyed to the two condominium units which are the subject of this appeal.
>
> Would that be stipulated to?
>
> MR. BIGMAN: Yes.
>
> MR. SILVESTRI: That would leave one legal issue and one factual issue for trial. *The legal issue is whether air rights are taxable as land or as improvement,* and if the legal issue is resolved in favor of taxing air rights as land, then the factual issue would be an allocation as between the land and building because we have stipulated that the total assessed valuation shall be the assessed valuation for the entire property. Is that correct?
>
> MR. BIGMAN: That's correct.
>
> . . . .
>
> THE COURT: All right. Then should the Court conclude that the amount allocated to land in each of these assessments should be taxed at millage rates applicable to buildings, there will be no need to determine anything further, is that correct?
>
> MR. BIGMAN: Yes, Your Honor.

N.T. at 4-5 (emphasis added). The record further indicates that Ira Weiss, counsel for Defendant Allegheny County, was present to cross-examine Mr. Bigman. N.T. at 16-17. Furthermore, pursuant to the stipulation of the parties, the lower court addressed itself *solely* to this issue. Thus, we find no merit in Appellant's contention.

buildings. Section 1 of the Second Class City Act further provides that the assessment made for county tax purposes shall be used to assess taxes in cities of the second class. (Pittsburgh is a city of the second class.) Thus, in the present case the taxing authority of Allegheny County was charged with determining whether the air rights owned by Taxpayers are to be classified as land or buildings. Allegheny County adopted the position that air rights are taxable as land and, therefore, assessed Taxpayers' units for both land and buildings.[6] On appeal, the Board of Property Assessment, Appeals and Review, sustained the assessment. Taxpayers appealed the Board's determination to the Court of Common Pleas. WEKSELMAN, J., held that air rights are not properly taxable as land and entered nonjury decisions fixing the fair market value at the total assessed value, as to which there is no dispute, but allocating the entire assessment to buildings.[7]

Appellant presents five issues on appeal. The majority of these issues revolve around the question of whether air rights are to be taxed as land or as buildings. Appellant argues: 1) that once air rights are occupied by a structure they become taxable as land; 2) that the presence or absence of a structure in the air space is immaterial; 3) that whether an entity other than the unit owner [the owner of the air rights] pays or will be pay-

---

[6] Specifically, the two units were assessed as follows:

Unit 15-J — assessed at $8,750

|  | Land = | $ 875 |
|---|---|---|
|  | Building = | $ 7,875 |

Unit 15-H—assessed at $14,300

|  | Land = | $ 1,430 |
|---|---|---|
|  | Building = | $12,870 |

[7] Thus, there was no change in the total assessment charged; instead, the decision merely disallowed the allocation of part of the assessment to land.

ing tax on the land under the condominium is also immaterial; and 4) that the method for assessing the valuation of air rights is proper and legal.[8] We will specifically address these issues, but first must determine how air rights are to be classified for assessment purposes. For the reasons set forth below, we affirm the decision of the lower court and hold that air rights are to be assessed as buildings and not as land.

Our analysis begins with examination of Chapter 19 of Title 68—Air Space—Estates, Rights and Interests, 68 Pa. C. S. §§801-803. These sections set forth the framework for treatment of air rights. Section 801 provides that air rights may be validly conveyed and transferred to one other than the owner(s) of the surface below. Thus, §801 specifically authorizes the sort of horizontal split in ownership present in this case.

Section 802 provides, *inter alia,* that "[e]states, rights and interests in air space above the surface of the ground" are to be "dealt with for all purposes and in all respects as estates, rights and interests in real property." Section 803 provides, in full:

> Estates, rights and interests in air space or
> parcels thereof above the surface of the ground,

---

[8] The first three questions in Appellant's "Statement of the Questions Involved" are as follows:

I. Whether air rights become taxable as land once those air rights are occupied by a structure.

. . .

II. Whether it is material that there is or is not a structure in the air space or that the owner, tenant or beneficial owner of the surface land under a condominium pays or is committed to pay real estate taxes on that land.

. . .

III. Whether the method for assessing the valuation of air rights in the instant matter is proper and legal.

Appellant's other issues have already been disposed of. See notes 2 and 5 above.

whether or not contiguous to the surface of the ground, shall if separately owned be separately assessed for taxation by each assessing unit in the Commonwealth for all types of taxes authorized by law to be assessed against real property.

While these sections make it clear that air rights are properly taxable, they do not answer the fundamental question of how air rights pertinent to a condominium are to be classified. The statute mandates that air rights are in all cases, and particularly with regard to taxation, to be treated as real property. However, the traditional definition of real property includes both land and buildings. Specifically, real property is defined as: "Land, and generally whatever is erected or growing upon or affixed to land. Also rights issuing out of, annexed to and exercisable within or about land." *Black's Law Dictionary* 1096 (5th ed. 1979). This definition, of course, takes us back to our starting point. We can now conclude without a doubt that air rights are real property, but we have not answered the question of whether those rights are to be assessed as land or as buildings.

The statute requiring county assessing authorities to distinguish between buildings and land, §1 of the Second Class City Act, does not define the two terms in question and offers no guidance on the issue. According to principles of statutory construction, therefore, we must look to the common and approved usage of these words. 1 Pa. C. S. §1903.

"Land" is defined as "the solid part of the surface of the earth in contrast to the water of oceans and seas . . . or to the air." Webster's Third New International Dictionary 1268 (3rd ed. 1986). "Building" is defined as "a constructed edifice designed to stand more or less permanently, covering a space of land, usually covered by a roof and more or less completely enclosed by walls,

and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure . . ." *Id.* at 292.

Although air space does not fit squarely within either of these definitions, we conclude that it is more closely aligned with "buildings" than with "land." Air space is certainly *not* the solid part of the earth's surface, and the dictionary specifically contrasts "land" and "air." Air space is, however, contained within a constructed edifice which is used as a dwelling or for another useful purpose.

This conclusion comports with the Uniform Condominium Act (UCA), 68 Pa. C. S. §3101-3414. As noted above, air rights are real property. Real estate and real property are generally considered synonymous. *See Black's Law Dictionary* 1137 (5th ed. 1979). The UCA provides a definition of real estate which, in accordance with the common usage construction set forth above, supports the conclusion that air rights cannot properly be taxed as land. Section 3103 of the UCA provides:

'Real estate.' Any fee, leasehold or other estate or interest in, over or under land, *including structures, fixtures and other improvements and interests which by custom, usage or law pass with a conveyance of land though not described in the contract of sale or instrument of conveyance.* 'Real estate' includes parcels with or without upper or lower boundaries, and spaces that may be filled with air or water. (Emphasis added.)

The language of the UCA mandates two conclusions: (1) air rights are properly classified as real estate, and (2) with regard to condominiums, it is proper to make a distinction between real estate and land. Although the Act's definition of real estate is very similar to the earlier noted definition of real property, it is clear that land, while included in the definition of real property, is nonetheless to be accorded a more narrow definition in

some circumstances. One can have an interest *in* land and one can have an interest *over* land, but one cannot have an interest in land above the ground.[9] Air rights are not land and, therefore, cannot be assessed as land.

We note also that the objective in assessing real property is to determine its market value.[10] The air space, in and of itself, is of little or no value. It is the utilization of the air space which is determinative of its value. The air space in question in this case is being used for a building. Its value, therefore, is derived from the value of the building, and the air space should be assessed as part of the building.

---

[9] The testimony of Joseph Garruba, a real estate assessor with twenty-three years of experience (N.T. at 18), emphasizes the incongruity of analogizing air rights to land and also, incidentally, highlights the complexity of this seemingly simple issue:

THE COURT: Doesn't somebody own the surface on which this building is built?

THE WITNESS: Up to the surface and up above this—

THE COURT: Isn't that person paying taxes on that land?

THE WITNESS: Not above that ground he isn't.

THE COURT: Okay.

THE WITNESS: He is not paying taxes above the ground.

THE COURT: But somebody is paying taxes on the building which is above the ground.

THE WITNESS: They are paying taxes on the building above the ground, and they also pay the taxes on the land above that ground. Anything below that ground is paid by another person.

THE COURT: Well, I am not familiar with land above the ground. That's a brand-new concept to me, I must confess.

(N.T. at 22-23).

[10] *See, e.g.*, Sections 4 and 10 of The General County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.4 & 5452.10.

Having answered the fundamental question of this appeal, we now turn to the specific issues raised by Appellant.[11] Appellant first argues that air rights are taxable as land. However, Appellant's argument on this issue is based on the assumption that the terms real estate and land are synonymous. Appellant refers us to 73 C.J.S. *Property* §16c to support the proposition that the terms real property, real estate and lands are synonymous. However, even the relied upon section does not provide a great deal of support for Appellant's position. Section 16c merely states:

> As the corpus of estates or interests, the terms 'real estate' and 'real property' may be construed like the term 'lands'; in this sense, these terms include the surface of the earth, and things of a permanent nature attached thereto, improvements of a permanent character placed on it, the space above the surface of the earth, and minerals, oils, and gases found below the surface.

We note first that we are not dealing with "lands" but with land. Secondly, general definitions regarding the "corpus of estates" are of little help, and, finally, the definition of "lands" offered would include not only air rights, but buildings as well. Furthermore, Appellant's argument fails in light of our conclusion that land and real estate are not synonymous.

Appellant next argues that the presence or absence of a structure in the air space is immaterial. We agree. As noted above, and as Appellant points out, air space is properly taxable as real estate. 68 Pa. C. S. §803. Thus, air space is taxable without regard to the presence of buildings, so long as the air is owned by an entity other than the owner of the land. The legislature has not au-

---

[11] See Note 8 above.

thorized blanket assessment of air rights, but provides for such assessment when the air rights are separately owned. 68 Pa. C. S. §803. Appellant is free to tax separately owned vacant air space,[12] or separately owned air space with buildings in it, but Appellant is not free to classify the air space as land.

Appellant's contention regarding the immateriality of the presence of structures obviously springs from an illustration offered by the lower court. Judge WEKSEL-MAN set forth the example of a home owner in Pittsburgh (owner of both the land and a home built on the land) and noted that this hypothetical taxpayer is not

_____

[12] For a case where vacant air space was found to have value see *Macht v. Department of Assessments*, 266 Md. 602, 296 A.2d 162 (1972). In that case, taxpayers owned a parcel of land with a 100-foot high building located on it. A development corporation sought to build a multi-storied complex next to the taxpayers' land. The corporation, desiring to maintain "unimpeded access to light and air," negotiated a lease with taxpayers' predecessor in interest whereby the corporation would lease the air space above the land and building owned by taxpayers. The corporation agreed to pay, as rent, twice the annual real estate taxes imposed on taxpayers' property, not to exceed $8,000.00 for the years 1962 through 1970. In 1969, the air rights were valued at $50,700.00.

We note that the issue in *Macht* does not parallel the issue before us, primarily because no Maryland statute provided for separate taxation of air rights. However, we recommend perusal of the case to those seeking enlightenment. We also recommend Note, *Conveyancing and Taxation of Air Rights*, 64 Colum. L. Rev. 338 (1964).

Finally, we are aware of one case focusing directly on the issue of the classification of air rights as land or as buildings. In *Chicago Union Station Co. v. Korzen*, 96 Ill. App. 3d 780, 422 N.E.2d 62 (1981), the Illinois court accepted the classification of air rights as land. However, the thrust of the case involves the leasing of air space over a railroad right-of-way and the classification of those air rights as carrier or non-carrier real estate. The classification of the air rights as land is given short-shrift by the Illinois court. *See* 96 Ill. App. 3d at    , 422 N.E. 2d at 67-68

assessed for air rights. Likewise, Judge WEKSELMAN concluded that the owners of the condominiums "whose air rights are completely filled by the structures which they own" should not be charged with an additional assessment for air rights. Trial Court Op. at 4. Judge WEKSELMAN's ultimate conclusion was that the intent of the statutes is to provide for the taxation of separately owned, unimproved air rights. While we tend to agree with Judge WEKSELMAN's ultimate conclusion, we note that Taxpayers have not questioned the total assessment of their property; in fact, the parties stipulated to the assessed valuation for the entire property. N.T. at 5. Taxpayers' contention throughout this proceeding has been that they cannot be assessed at the millage rate for land because they own no land. Taxpayers have not asserted the existence of or impropriety of any sort of additional assessment.

Thus, this case does not present the question of whether an *additional* assessment for air rights is proper. Nonetheless, we note in passing that Judge WEKSELMAN's decision would not have purged any improper additional assessment. The decision would merely have lowered the taxes payable on the additional assessment by allocating the assessment to buildings rather than land.

To reiterate, we agree with Appellant that the presence or absence of a structure within the air space is immaterial. Air space without a structure can have value[13] and the legislature has not distinguished between improved air space and unimproved air space. However, our agreement with Appellant on this issue does not affect our conclusion that air rights are not properly taxable as land.

---

[13] See note 12 above.

Appellant next contends that whether an entity other than the Taxpayers pays or will be paying taxes on the land under the condominium is also immaterial.[14] As presented by Appellant, this argument boils down to the assertion that the air rights have to be taxed as land because it is possible to convey mere air rights without a building to occupy them. If there is no building, Appellant argues, the land millage must apply because there will be no improvements to which assessed value can be allocated. This seems a somewhat plausible argument, but ignores the very important point that the *owner* of the land will be assessed at the land millage rate and pay taxes based on the value of the land. Furthermore, our holding does not preclude the valuation of air rights. If vacant air space in Allegheny County has value, then Appellant is free to value it for assessment purposes. But the lack of improvements does not transform air rights into land.[15]

Appellant next asserts that the method for assessing the valuation of air rights pertinent to condominiums is proper and legal. This is not an issue. No one has suggested that the valuation and assessment are improper.[16] The issue is whether air rights can be *classified* as land, not whether the assessment itself was improper.

Accordingly, we affirm the decision of the trial court.

---

[14] In its brief, Appellant has grouped this issue with the immediately preceding issue. *See* note 8, above. In the interest of clarity, we have chosen to deal with them separately.

[15] We are aware that it will often be the value of improvements which give air space any value. However, that will not always be the case; although we have answered the question of how air rights are to be classified, we have not answered the question of how air rights are to be valued. The latter question is not before us.

[16] As noted above, there is no dispute as to the total assessed value. Trial Court Op. at 5.

## ORDER

AND NOW, October 29, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

Judge CRAIG and Judge BARRY did not participate in the decision in this case.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent.

I disagree with the majority's conclusion that air rights are to be assessed as buildings rather than land.

Undoubtedly, air rights are real property and may be conveyed. 68 Pa. C. S. §801. However, as real property, the right to convey air space is a "right *issuing out of, annexed to* and exercisable within or about *land.*" Black's Law Dictionary 1096 (5th ed. 1979) (emphasis added).

Section 801 provides that rights and interests in "air space above the ground . . . whether or not contiguous to the surface . . . may be validly conveyed or otherwise transferred to a person or other than the owner or owners of the surface below." The right to convey air space belongs to the surface owner—whether he conveys air rights to space immediately or many stories above the surface below.

Thus, the right to or interest in air space—and the right to convey it—is derived from the subadjacent land, not from the building thereon. Landowners, especially in large cities, regularly convey air rights while retaining ownership of the land. The air space to which the right attaches may be unimproved and has a value separate and distinct from any building. (It need not be contained within a constructed edifice, as the majority states. In *Macht,* the taxpayer conveyed air space *above*

an existing building to assure an open space through which air and light would pass to a neighboring property.)

The value of air rights is based on the value of the *location* from which the rights are transferred. *See generally* Note, 7 Cardozo L. Rev. 489, 508 n. 130 and n. 135. This value has been alternatively described as the *residue of the complete* land value when costs and capitalized losses are deducted or as the value of the entire fee less the costs of construction and loss in value due to loss of rentable space. Note, 64 Colum. L. Rev. 338, 353-354.

If a landowner conveys air rights, those rights relate directly to the parcel of land to which they were once "affixed." The air space to which the right attaches, when described in three dimensions, has reference to a specific locus on the land, *Id.*, no matter how many times conveyed.

Unquestionably, air space is not land. Nor can one have an interest in "land above the ground," as the majority notes, p. 548, and n. 9. However, the property *interest* to be taxed is one which issues from the land. For this reason, I conclude that air rights should be assessed as land.

Accordingly, I would affirm the common pleas court.