KAHN, J.T.C.
This is the court’s determination with respect to cross-motions for summary judgment. The assessment for tax year 2002, which is the subject of these motions, involves certain airspace. Plaintiff (taxpayer) moves to strike the assessment as void, and the defendant municipality cross-moves to dismiss the first count of taxpayer’s complaint.[1]
The subject airspace is located above Block 586.5, Lots A.2, B, and C.2, as shown on the tax map of the City of Jersey City, situated between Tonnelle Avenue and John F. Kennedy Boulevard. At all relevant times, the land, above which the subject airspace is located, was owned by the Port Authority Trans-Hudson Corporation (PATH/Conrail). The airspace is more specifically described as beginning at a point sixty-eight (68) feet above the top rail of the highest track over the aforementioned block and lots.
In 1990, taxpayer purchased the “air rights” from PATH/Conrail. The purchase was initially memorialized by a conditional agreement of sale dated June 29, 1988, wherein the consideration set forth is $900,000. Pursuant to that agreement, “possession of the premises shall be delivered at closing by customary form of bargain and sale deed without any covenants or warranties of title, express or implied.” The agreement further provided that a more specific description of the airspace would be set forth in the deed. Thereafter, on January 9, 1990, the deed between Port Authority Trans-Hudson Corporation and Hartz Mountain Industries, Inc. was executed containing the following description:
ALL THOSE CERTAIN air rights consisting of all that volume of space beginning at a point in southeasterly line of Tonnelle Avenue distant southwesterly 84.35 feet as measured along the southeasterly line of Tonnelle Avenue from the corner *87 formed by the intersection of the southeasterly line of Tonnelle Avenue with the southerly line of Newark Avenue and running the following ten (10) courses and distances along the northerly line of lands conveyed to the Port Authority Trans-Hudson Corporation by deed from the Consolidated Rail Corporation dated June 30, 1987 and recorded in the Hudson County Register’s Office on July 6, 1987 in Deed Book 3772 at page 27.
Beginning in 1992, the municipality assessed the airspace for $1,032,000. The taxpayer filed appeals in 1992 and 1993 challenging the assessment, resulting in a settlement reducing the assessment to $780,000. No further challenges were made as to the subject assessment until the current appeal by the taxpayer of the 2002 assessment of $780,000. There is no dispute that the underlying land, over which the airspace exists, is owned by the Port Authority Trans-Hudson Corporation, is operated for railroad purposes, and is exempt from property taxation pursuant to the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 to -77 (hereinafter referred to as the “Railroad Act”).
The taxpayer’s argument has three major points. First, the taxpayer urges that no statutory authority exists to permit the assessment of air rights. It does acknowledge that if and when improvements are placed within the airspace, the improvements may be subject to local property taxation. Since no improvements have been made as of the relevant assessment date, the taxpayer contends that the municipality can make no assessment on the airspace. Second, the taxpayer contends that in any event, what was conveyed was similar to an easement, rather than a fee simple conveyance. As a result, it asserts that an easement cannot be the subject of local property taxation. The taxpayer’s third contention is that the Railroad Act preempts local property tax assessment. The taxpayer suggests that since the underlying land is owned by the “railroad,” it is therefore not subject to local property tax assessment. Consequently, the taxpayer urges that the airspace above it should similarly not be subject to local property taxation.
This court finds that the taxpayer’s arguments are unpersuasive. Accordingly, for the reasons hereinafter stated, the taxpayer’s motion for summary judgment is denied and the municipali *88 ty’s cross-motion for partial summary judgment, dismissing the first count of taxpayer’s complaint is granted.
I. LAW AND ANALYSIS
A. Summary Judgment Standard
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). There being no issue of material fact in dispute, the matter is ripe for summary judgment.
B. Taxable Status
1. The Airspace is Subject to Local Property Tax Assessment
The taxpayer contends that there is no statutory or case law that supports a finding that airspace is taxable as land. However, there is ample statutory language stating that estates and interests in real property may be created in areas above the surface. Specifically, N.J.S.A 46:3-19 through 21 provides:
Estates, rights and interests in areas above the surface of the ground, whether or not contiguous thereto, may be validly created in pei’sons or cox’pox’ations other than the owner of the land below such ax-eas and shall be deemed to be estates, rights and intex-ests in land.
[NJ.S.A 46:3-19]
[Such estates] may be held, enjoyed, possessed, aliened, conveyed, exchanged, transferred, assigned, demised, x-eleased, charged, mortgaged or otherwise encumbei'ed, devised and bequeathed in the same mannei-, upon the same conditions and for the same uses and pux-poses as estates, rights and interests in land.
IN.J.S.A. 46:3-20]
All of the i-ights, privileges, incidents, powers, x-emedies, burdens, duties, liabilities and restx-ictions pertaining to estates, x-ights and intex-ests in land shall appertain and be applicable to such estates, rights and intex-ests in ai’eas above the surface of the gx’ound.
[N.J.S.A. 46:3-21].
As a result, if estates and interests may be created in the area above the surface, then it must follow that those estates and interests should be subject to the same burdens, duties and liabilities as estates and interest in land, including local property *89 tax assessment. This court finds that N.J.S.A. 46:3-19 through 21, inclusive, permits the creation of estates and interests in airspace, and that one of those interests may be ownership of airspace. Consequently, local property tax assessment of such an ownership interest in airspace logically follows from the aforementioned statutory language.[2]
The taxpayer argues that N.J.A.C. 18:12-10.2 defines real property without including airspace, and concludes from that regulation that air rights are outside the realm of local property taxation. The taxpayer’s reliance on N.J.A.C. 18:12-10.2 is misplaced. N.J.S.A. 46:3-19 through 21 mandate that air rights and/or airspace be construed as interests in land and subject to the “burdens, duties and liabilities pertaining to estates, rights, and interests in land.” In fact, N.J.A.C. 18:23A-1.31 provides as follows:
(a) When subject to assessment and taxation, air rights must be shown on tax maps in accordance with the following:
1. The area included in the air rights should be circumscribed by dashed lines and inscribed with the words “Air Rights.”
2. The lot number of the parcel subject to air rights shall also be the number assigned to the air rights with a decimal added commencing with “.01.” *90 Example: Lot 15 is subject to air rights in favor of an independently owned parking lot atop a building. The parking lot will appear as lot 15.01 ...
3. The elevation above ground to be shown when available____
Although the tax maps fail to show dual ownership of the subject property[3], that is (a) PATH/Conrail’s retained ownership in the underlying land, and (b) taxpayer’s ownership in the airspace above, taxpayer’s interest was clearly indicated when the deed was filed in the Hudson County Register’s Office, and there is no question that the underlying land was not conveyed. The taxpayer argues that because the tax map does not differentiate between the underlying land and the airspace, that it is exempt from assessment. However, this court cannot conclude that a mere technicality should deprive the City of its right to make a property tax assessment on the airspace. Specifically, in Hull Junction Holding Corp. v. Princeton Bor., 16 N.J.Tax 68 (Tax 1996), the court held that a mistake made by the assessor “ ‘does not deprive the municipality of the right to enforce its tax lien against real estate.’ ” Id. at 124, quoting Becker v. Little Ferry Bor., 125 N.J.L. 141, 144, 14 A.2d 493 (Sup.Ct.1940). Consequently, this court finds that the technical failure of the tax map to specifically describe the underlying land is not sufficient to void the assessment appealed from.
Additional support for the notion that airspace can be the subject of a local property tax assessment may be found in the New Jersey Supreme Court’s opinion in Jersey City Chapter of the Property Owner’s Protective Ass’n. v. City Council of Jersey City, 55 N.J. 86, 259 A.2d 698 (1969), in which the issue before the court was whether airspace could be blighted. While that case dealt with a different issue than the one before this court, the analysis employed by the Court in Jersey City Chapter is nevertheless relevant to the issue at hand and is helpful in resolving the present matter. In Jersey City Chapter, the Court held that airspace is included in the definition of land, and therefore, could also be blighted. The court stated:
*91 Since the early thirties there have been instances in which the space above railroad tracks has been separately conveyed for highly productive development. The conveyed space has been generally viewed as real property. “The air itself is not real property and is not conveyed; airspace, however, is real property when described in three dimensions with reference to a specific locus.” ... When in 1938 the Legislature expressly recognized that separate interests in the space above land may be validly created, it appropriately declared that such separate interests, shall be deemed to be “interests in land.” L.1938, c. 370 — now N.J.S.A 46:3-19 to 22 inclusive. Surely, in light of all of the above, it cannot fairly be said that when the Legislature used the general term “land” without more, it evinced the shortsighted purposes of excluding the space above railroad tracks and the like as a proper subject of a blight or renewal determination. (Emphasis added) (Citations omitted).
[Id. at 98-99, 259 A.2d 698].
The taxpayer argues that even though airspace may be blighted, it nevertheless cannot be assessed. This court disagrees. Employing an analysis similar to that of Jersey City Chapter to the present set of facts, it is evident that the “air rights” and/or airspace that the taxpayer purchased are analogous to land. Specifically, while the air itself cannot be included in the definition of land, the airspace that the taxpayer purchased is included within this definition, because it is described in three dimensions with reference to a specific locus. For example, the deed transferring ownership between PATH/Conrail and the taxpayer states that the taxpayer “is to receive all that air space sixty-eight (68) feet above Block 586.5, Lots A.2, B, and C.2, as shown on the tax map of the City of Jersey City, situated between Tonnelle Avenue and John F. Kennedy Boulevard.” Therefore, if “air rights” constitute land when they are appropriately described, and consequently, may be blighted as such, then it must follow that “air rights” are similarly subject to local property tax assessment when they are appropriately described. In the instant case, the airspace is appropriately described in three dimensions with reference to a specific locus. Therefore, this court finds that the municipality may properly assess the airspace.
2. The Airspace Herein Does Not Amount to an Easement
Next, taxpayer contends that the air rights received from PATH/Conrail merely amount to easements, and are, therefore, not subject to local property tax assessment. The Appraisal *92 Institute, The Appraisal of Real Estate 71 (12 ed.2001), defines an easement as an “interest in real property that transfers use but not ownership of a portion of an owner’s property.” Conversely, the Institute defines ownership of real property as:
Real Property includes the interests, benefits, and rights inherent in the ownership of physical real estate. Real property includes the “bundle of rights” that is inherent in the ownership of real estate.
In the bundle of rights theory, ownership of real property is compared to a bundle of sticks. Each stick represents a distinct and separate right, which may be the right to use real estate, to sell it, to ease it, to enter it, to give it away, or to choose to exercise more than one or none of these rights.
It is possible to own all of the rights in a parcel of real estate or only a portion of them. A person owning all of the rights is said to have a fee simple title. Fee simple title is regarded as an estate without limitations or restrictions. Less than complete estates result from partial interests that are created by selling, leasing, or otherwise limiting the bundle of rights in the fee estate.
[Lidell v. Mimosa Lakes Association, 6 N.J.Tax 417, 423 (Tax 1984) (quoting American Institute of Real Estate Appraisers, The Appraisal of Real Estate (8 ed.1983)).]
There is no language in the conditional agreement of sale or the deed that speaks of other than a full and complete transfer of ownership. Whether or not the interest conveyed is a fee simple interest or other interest in real property, the statutes cited herein clearly establish the interest as the type of estate subject to real property taxation. Specifically, while there may be obstacles in the way of future use of the property, taxpayer is not prevented from holding or selling the airspace for a consideration. Furthermore, obstacles in the way of future use of the property merely go to show that perhaps the taxpayer overvalued the “air rights” it purchased. Unfortunately for the taxpayer, its airspace has remained idle for several years, a fact that has no bearing on the municipality’s ability to assess the airspace but, rather, goes to the issue of valuation. Valuation is raised in the second count of taxpayer’s complaint and is not the subject of the within motions.
3. The Subject Airspace is Not Exempt Pursuant to the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 et seq., (Railroad Act)
Lastly, taxpayer contends that even if the airspace were subject to taxation, only the Railroad Act would apply, preempting *93 any local assessment. Under the Railroad Act, the State Tax Commissioner [4] is the only person who has the authority to assess land used for railroad purposes. N.J.S.A. 54:29A-7. The purpose of the act was to avoid discrepancies caused by the “varying methods and standards of valuation by the different municipalities in which the property is located, and to secure uniform assessment.” Jersey City v. Armed Realty Corp., 45 N.J.Super. 49, 55, 131 A.2d 549 (App.Div.1957). In the present case, the taxpayer contends that if the airspace has any additional value, said value is derived from the underlying land. The underlying land is subject to the Railroad Act, and therefore, it is exempt from local property assessment. This court disagrees.
In Jersey City v. Armed Realty Corp., the court found that a lease granting the right to erect a building over the rooftop of the Journal Square rail station in Jersey City, was covered under the Railroad Act and exempt from local taxation. Id. at 52, 131 A.2d 549. The Armed Realty court reasoned that because the building would be superimposed on the old existing structure, and because the railroad company retained ownership of the leased airspace, the “over-all railroad use continues unabated.” Id. at 53, 131 A.2d 549. Therefore, the court concluded that even though the building erected in the airspace was not being used for railroad purposes, it must be characterized as such, because the railroad retained an ownership interest in the property. Consequently, the Armed Realty court stated, “[ljand in railroad use may not be assessed locally even though a portion of the building on it is put to nonearrier purposes.” Id. at 61, 131 A.2d 549. In fact, “[ojnly property which is not used at all for [railroad] purposes shall be taxed by the local authorities.” Id. at 60, 131 A.2d 549.
In the instant case, the taxpayer contends that the “air rights” it purchased from PATH/Conrail are similar to the airspace leased in Armed Realty, and therefore, the airspace should be exempt from local assessment. However, the present case is distinguishable from Armed Realty, because PATH/Conrail did not retain an *94 ownership interest in the subject airspace, as did the railroad company in Armed Realty, which merely leased the airspace. Here, PATH/Conrail sold the airspace to the taxpayer in fee simple, and a deed memorializing the sale was filed with the County Register of Deeds. Additionally, it is undisputed that the airspace here is not being used for any railroad purposes[5]. As a result, because the airspace is divorced from the underlying land, has separate ownership, and because it is not being used for railroad purposes, it is not covered by the Railroad Act and is subject to local property tax assessment.
II. CONCLUSION
For the reasons hereinabove set forth, this court finds that the “air rights” the taxpayer purchased are not analogous to an easement of right. Additionally, this court finds that the “air rights” are to be construed as an interest in land, pursuant to N.J.S.A 46:3-19 through 21, and consequently, subject to the same burdens and responsibilities as land, including local property tax assessment. Furthermore, this court finds that the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 to -77, is not applicable to the present set of facts, and as a result, the “air rights” are not exempt from local assessment. Accordingly, the taxpayer’s motion for summary judgment is denied, and the municipality’s cross-motion for summary judgment, dismissing the first count of taxpayer’s complaint, is granted.

 The first count of taxpayer's complaint seeks a determination voiding local property assessment of taxpayer's "air rights." The second count alleges in the alternative that taxpayer's "air rights" are over-assessed.

 New Jersey is not alone in finding that estates and interests may be created in airspace. For example, under Pennsylvania law, " '[ejstates, rights and interests in air space above the surface of the ground' are to be 'dealt with for all purposes and in all respects as estates, rights and interests in real property.’ In re Bigman, 110 Pa.Cmwlth. 539, 533 A.2d 778, 781 (1987) (quoting 68 Pa.S. § 802). In Bigman, the court found that air rights are the proper subject of local property tax assessment. Bigman, supra, 533 A.2d at 781. Specifically, the Bigman court held that "[t]he statute mandates that air rights are in all cases, and particular with regard to taxation, to be treated as real property.” Ibid. Consequently, the Bigman court concluded that so long as the airspace is "owned by an entity other than the owner of the land,” the airspace is subject to taxation regardless of the presence of buildings within. Id. at 782. Additional support for the proposition that air rights are properly taxable, may be found in the jurisdiction of Maryland. See Macht v. Department of Assessments of Baltimore City, 266 Md. 602, 296 A.2d 162 (1972). In Macht, the court recognized airspace as " 'an independent unit of real property’ the owner of which is entitled to all the rights associated with land ownership." Id. at 168 (citations omitted). The court held that so long as owners of airspace over their property make no use of the airspace, it cannot be the subject of an assessment. Ibid. However, the court concluded that once the property owners “[deny] themselves the use of the [airspace] for a price, it [takes] on value for the purposes of assessment." Ibid.

 The Assessor's Office intends to document the dual ownership of the subject property for its 2004 Tax Duplicate.

 Now known as the Director of the Division of Taxation.

 Evidence that PATH/Conrail considered how much airspace it could afford to sell without disrupting its railroad operations is substantiated by the change in the dimensions of airspace sold to the taxpayer and the airspace retained by the railroad. Specifically, between the time when the taxpayer and PATH/Conrail entered into the Conditional Sale Agreement and the date the deed was filed, the amount of airspace retained was altered from twenty-three (23) feet above the top rail of the highest track ... to sixty-eight (68) feet above the top rail of the highest track.